GEORGE N. TITUS *et al.*, Plaintiffs in Error, *v.* JOHN GINHEIMER *et al.*, Defendant in Error.

### ERROR TO MADISON.

A railroad tank-house, locomotive and cars, are presumed to be annexed to the realty, and in fact are a part of it, and are not liable to be sold by a constable, on an execution from a justice of the peace.

THIS case was, by agreement, heard in the Second Grand Division.

The appellants filed their bill in chancery in the Circuit Court of Madison county, as mortgagees of the Chicago, Alton and St. Louis Railroad, the rolling stock, etc., thereof.

The bill refers to the acts incorporating "The Alton and Sangamon Railroad Company," and amendatory of that act, and changing the name to "The Chicago and Mississippi Railroad Company," the construction of the road from Alton to Joliet by said company, and the operation thereof since about August, 1854.

The bill sets forth copies of the first mortgage bond and coupon; of second mortgage bond and coupon; refers to a further amendatory act, alleges the issue of bonds thereunder, and sets out copies of bond and coupon; refers to third mortgage to secure these bonds; refers to another act, changing the name of the company to the "Chicago, Alton and St. Louis Railroad Company," and sets out the copy of deed of confirmation and further assurance to secure the bonds secured by third mortgage; the "deed of assignment by the Chicago, Alton and St. Louis Railroad Company," to "William Fullerton, Henry J. Brown and Edward Keating;" the copy of advertisement published by said Fullerton, Brown and Keating, and alleges the purchase of the road, etc., by Matteson and Litchfield; sets out the deed of said Fullerton, Brown and Keating, to Matteson and Litchfield.

A copy of the charter of the St. Louis, Alton and Chicago Railroad Company is set out.

The last clause of the fourth section of the charter is in these words: "And all mortgages made or assumed by said company, upon its rolling stock or personal property, shall be valid liens thereon, although not acknowledged as required by the statute touching the execution and recording of chattel mortgages." Bill also sets out the fourth section of said charter.

The bill next sets out the mortgage to the complainants, as trustees, a portion of the granting clause of which is as follows: "together with all its lands, tenements and hereditaments, acquired and appropriated for the purpose of a right of way, for a single or double track railroad, and the appurtenances thereof, and for depots, engine houses, car houses, station houses, warehouses, work-shops, superstructures, erections and fixtures, and also all and every the privileges, franchises and rights of said party of the first part, acquired at the date of said mortgage, or thereafter to be acquired by it; and also all the rails, bridges, ways, piers, depots, engine houses, car houses, station houses, warehouses, work-shops, erections, superstructures, fixtures, privileges, franchises and rights of said party of the first part, and all the lands, tenements and hereditaments and real estate acquired and appropriated, wheresoever and whatsoever, now owned by the said party of the first part, or hereafter to be owned by it; and also all the locomotives, tenders, baggage, freight and other cars, of or belonging to it, and all other cars, carriages, tools, machinery and equipments for the railroad of the said party of the first part; and also all goods and chattels employed in and about the operation of said road, now owned by the said party of the first part, or thereafter to be owned or acquired by it, in any way relating to or appertaining to said railroad, together with all the tolls, rents, issues, freight money, rights, benefits and advantages to be derived, received, or had therefrom by said party of the first part, in any way whatsoever."

By said mortgage, said trustees are authorized, in case of default, to sell "as well the said railroad and franchises as all other property and premises hereby granted and conveyed, or intended so to be, and all benefit and equity of redemption of the said corporation therein whatsoever, always with benefit of the franchise, and subject to the conditions thereof;" and also it is provided that they "shall have full power and authority to make and deliver to the purchaser or purchasers thereof, good and sufficient deed or deeds of conveyance, for the said lands, tenements and real estate, in fee simple or otherwise, according to the title and interest of said company therein, and good and proper conveyances and assignments of the other property hereby granted and assigned."

The bill next alleges the issuance of bonds secured by mortgage to complainants, to an amount exceeding three hundred thousand dollars; that the interest on these bonds has remained unpaid since July, 1858, and the interest on bonds secured by prior mortgages is and has been in arrear and unpaid since

1856; that many judgments have been obtained against the company, on which executions have been issued; that the company is largely indebted; that any sale of the property contained and embraced in the said mortgages, by the trustees therein, or in any of them mentioned, would, at the present time, be ruinous to the interest of all, or a large majority, of the bondholders and creditors; that the preservation of all the property of the company, its line of road, and all the equipments thereof, and machinery, tools, etc., used in or necessary for the constant operation of the road, intact and undisturbed, by sale or otherwise, is essentially and absolutely necessary to the. protection of the interests of the various bondholders and other creditors of said company; that the company has no other means of paying any of its indebtedness than by the income derived from the constant operation of their said road, or by sale of the property embraced in said mortgages, and that by such a sale, now or within a short time made, not more than sufficient would be realized than would pay the first two mortgages, if so much as that; that all the rolling stock, engines, cars, tools, machinery, materials, wood, and other materials used in the operation, and now in the possession of the said company for such use, were either in their possession at the time of the execution and delivery of the last mortgage to the complainants, or have been purchased with the earnings of the road since that time, and substituted in lieu of those articles then actually in their possession and embraced in said mortgage.

The bill then shows the recovery of judgments by John Ginheimer, before justices of the peace, the issuing of the executions to Missore, constable, and levy thereof upon tank-house erected by said company, and the advertisement thereof for sale on the 14th November, 1859; charges that the tank-house was erected by the company out of the earnings of the road, and is absolutely necessary to said company for the operation of its road, in order to get water from the Mississippi river for the supply of the locomotives running on the road; that George T. Brown recovered a judgment against said company, upon which execution had been issued and placed in the hands of William T. Brown, sheriff of Madison county, to execute, and that said plaintiff, and said sheriff by the direction of the plaintiff, threaten to levy and are about to levy said execution upon the cars, locomotives, and other property belonging to said railroad company.

Bill charges, that all the property belonging to said railroad company is embraced and protected by this aforesaid mort-

gage; that the same as in said bill before stated is necessary to be preserved and protected for the benefit of complainants and other mortgagees, and that said railroad company has no property in its possession which is not necessary and absolutely required for the successful use and occupation of its said railroad, and which, as complainants are advised and believe, is not embraced in their said mortgage.

Prayer for answer, process, injunction and general relief.

Injunction ordered by RICE, Judge, of the 18th Circuit.

Geo. T. Brown alone filed general demurrer to bill.

Demurrer sustained by the court, bill dismissed, and decree rendered in favor of defendants for costs.

Assignment of errors: the court erred in sustaining the demurrer to said bill; in dismissing said complainants' bill, and dissolving the injunction granted therein; in rendering decree against complainants; and in not making said injunction perpetual.

STUART & EDWARDS, for Plaintiffs in Error.

G. KŒRNER, for Defendants in Error.

WALKER, J. The various legal propositions involved in this record were discussed and determined in the case of *Titus* v. *Mabee*, 25 Ill. 257, at the present term, and it is therefore deemed unnecessary to again discuss them here. It was there held that railroad cars and locomotives were, when on the road for use, *prima facie* a part of the realty, and could not be severed and sold by the officer under an execution. This bill alleges, that the sheriff was threatening to seize and sell the cars, locomotives and other property of the road under an execution in his hands, and prays that he and the plaintiffs in execution may be restrained. Also that a constable, under an execution from a justice of the peace, had levied upon a tank-house belonging to the road, and was proceeding to sell it. All buildings and improvements of a permanent character placed upon or annexed to the freehold, usually become a part of it, and can only be separated from it by the owner.

That a railroad tank-house is of that character, is unquestionably true, and as such is not subject to levy and sale by a constable on an execution from a justice of the peace. His authority is only to seize and sell goods and chattels, and when he attempts to sell real estate or permanent fixtures, he acts in excess of his authority, and may be restrained by injunction. The court below erred in sustaining the demurrer

and dismissing the bill.    Until the evidence was heard, the presumption is, that the tank-house, the cars and locomotives were annexed to, and formed a part of the real estate of the road.    If after hearing the evidence it had appeared that they had been, and then were severed from the track and premises of the road, the bill should have been dismissed.    The decree of the court below dismissing the bill, is reversed, and the injunction restraining the sale of the cars, locomotives and tank-houses, is continued until a hearing, and dissolved as to other property, and the cause is remanded.

*Decree reversed.*