# John J. Curran
## v.
## George W. Smith et al.

*Mechanic's Lien—Cars in Brick-yard—Sec. 35, Chap. 82, R. S.*

1. A mechanic's lien attaches to cars used in connection with the drier in a brick-yard.

2. A petition for a mechanic's lien by an original contractor can not be sustained unless he has complied with the provisions of Sec. 35, Chap. 82, Rev. Stat., as amended.

[Opinion filed June 30, 1890.]

Appeal from the Circuit Court of Cook County; the Hon. O. H. Horton, Judge, presiding.

Messrs. Hanecy & Merrick, for appellant.

Mr. Frank Ives and Smith & Harlan, for appellees.

Garnett, J. Appellant was made a defendant in the Circuit Court to a bill for foreclosure filed by George W. Smith, trustee, and Lazarus Silverman, and made answer thereto, which he prayed might be taken as a cross-bill. The answer and cross-bill assert a mechanic's lien on the premises in question (a brick-yard), for labor and materials for the erection thereon of a brick-drier and platform, and for 100 double-deck cars to be used in connection with the drier, and for making connection between the drier and certain boilers on the premises. The drier is a brick building forty feet wide, by sixty-five feet long, and about twelve feet high. The cars are small, portable cars, each having the capacity for carrying about 500 brick, and are used upon tracks built for the purpose in the drier. The wheels of the cars are small, regular railroad wheels, with narrow flanges. The brick, as soon as they come from the molds, are run upon a belt to one end of the drier, and are placed upon the cars, which are then

run into the drier on the track, where they remain until the drying is complete. When the brick are dried, the car is run out at the other end of the drier, the brick are transferred to other cars and wheeled to the kiln for burning. The cars in question are all used in the drier as described, were intended for that purpose, and the drier could not be effectively operated without them, or other cars of the same pattern. When the cars are not in use they are kept under a shed, which is under the same roof as the drier.

The contract price for the drier, platforms and cars, and making connections between the boilers and drier, was $4,000. The price of the cars was not separate, nor is there means of ascertaining what part of the total sum should be considered as the price of the cars. The objection is made by appellees that the cars are no part of any building within the meaning of Sec. 1, Chap. 82, R. S., but are simply personal property, for which no lien attaches.

The cases relating to, and defining what are, or are not, fixtures passing with the realty, are very numerous, but no satisfactory general rule of easy application can be deduced from them. They will generally be found to be governed by the relation between certain parties, or by their contract indicating that the property is, or is not, to become a part of the freehold. An extended citation of authorities would, therefore, scarcely be useful in determining the point now presented.

The character of rolling-stock of railroads was established as realty by decision of the Supreme Court thirty years ago. Palmer v. Forbes, 23 Ill. 301. And the doctrine was reiterated in Titus v. Mabee, 25 Ill. 257, and Titus v. Ginheimer, 27 Ill. 462. Since then, it is true, the Constitution of 1870 has provided that the rolling-stock of railroads shall be considered personal property, (Art. II, Sec. 10), but the common law of the State is found in those cases, and they may be regarded as furnishing an analogy for the question presented here. A case, however, which, in the opinion of the majority of the court, is in point, is Dobschuetz v. Holliday, 82 Ill. 371, where it was held that a box made to be used

Curran v. Smith.

in connection with other machinery in hoisting coal from mines was a part of the realty, and that a mechanic's lien therefor attached. The box was held to be a necessary and indispensable part of the machinery for raising coal, and as it was connected with the other machinery which was attached to the realty, it also became a part of the realty. "Such boxes," said the court, "are a part of one system of machinery, each part being indispensable to the working of the other, and without which other parts would be utterly valueless for the purposes intended." The reasoning seems to be peculiarly applicable to these cars.

There are cases which seem to be inconsistent with the conclusion here reached, as, for example, Woolford v. Baxter, 33 Minn. 12, where it was held that the coops, hogsheads and fermenting tubs of a brewery were personal property. It is to be noted, however, that while those articles were made purposely for use in the brewery, and the work of the establishment could not be conducted without them, they were not in any manner attached to the building, or to any system of machinery that was so attached.

But there is a fatal objection to appellant's application for a lien. The contract was made August 3, 1887, and he made no attempt to comply with Sec. 35, Chap. 82, R. S., as amended (Sess. Laws, 1887, p. 169 ), which requires the original contractor, whenever any payment of money shall become due from the owner, to give to the owner a statement, under oath, of the number and names of all sub-contractors, mechanics or workmen in his employ, etc., and enacts that until the statement thus provided for is made, the contractor shall have no lien against the owner on account of such contract. We held, in Burnside v. O Hara, 35 Ill. App. 150, that a petition for mechanic's lien, by an original contractor, could not be sustained unless he had complied with the provisions of that section. This point is controlling of the present appeal. The decree is affirmed.     *Decree affirmed.*

GARY, P. J. I dissent from that part of the foregoing opinion which holds that the cars were a part of the realty.