## HERBERT JENNEY

### V.

### GEORGE W. JACKSON ET AL.

1. FIXTURES.—An engine and machinery used for manufacturing purposes, and described in a deed of trust as personal property, but so fixed that they cannot be removed without tearing down the walls of the building where they are placed, are fixtures, and pass as a part of the realty under the trust deed. The mere description of them in the deed as personal property, does not make them so, nor estop the party from asserting their true character as fixtures.

2. TAKING POSSESSION UNDER TRUST DEED.—In order for the trustee to take possession of such property under the deed of trust, it is not necessary that he should remove the property to the injury of the premises. The placing by him of an agent in charge of the property and acting under his orders, is sufficient, even though such agent was the former superintendent of the company.

3. ACTION AT LAW.—Although defendants may have had an action at law, by way of trial of the right of property, yet, if the action of the sheriff had proceeded to the point threatened—tearing down the wall and removing the property—it is manifest the remedy at law would have been inadequate, and in such a case a court of equity has jurisdiction by injunction to prevent a threatened wrong.

ERROR to the Circuit Court of Harding county; the Hon. M. C. CRAWFORD, Judge, presiding. Opinion filed April 2, 1880.

Mr. JAMES M. WARREN, for plaintiff in error; as to the right of equitable interference, cited 2 Story's Eq. §§ 827, 928.

A director of a corporation may loan to the corporation money for its benefit, and may recover the same: Twin Lick Oil Co. v. Marberry, 1 Otto, 587; Merrick v. Peru Coal Co. 61 Ill. 472; Pierce v. Patrick, 3 Met. 4; Angell and Ames on Corporations, § 389.

A debtor may sell his property at a fair price, even with the avowed intention of defeating an honest claim, if no lien exists to forbid it: Waddams v. Humphrey, 22 Ill. 661.

Messrs. MORRIS & CLARK, for defendants in error; that a con-

veyance of property to a trustee is void, if it does not clearly declare the use for which it is conveyed, cited Grover v. Wakeman, 11 Wend. 200; 1 Am. Lead Cas. 62; 2 Story's Eq. § 979.

Every grant to hinder or delay creditors is void: Rev. Stat. 1874, 540.

As to proof of fraud: Bryant v. Simoneau, 51 Ill. 324; Reed v. Noxon, 48 Ill. 323.

As to effect of a mortgagor retaining possession of the notes for which the mortgage was executed: Bullock v. Narrott, 49 Ill. 62.

Of the misapplication of chattel property covered by a mortgage: Wait v. Denison, 51 Ill. 319.

Allowing the mortgagor to retain and sell the property in the usual course of trade: Davis v. Ransom, 18 Ill. 396; Ogden v. Stewart, 29 Ill. 122.

A debtor in failing circumstances can only assign his property for the benefit of his creditors: Nesbitt v. Digby, 13 Ill. 387; Phelps v. Curts, 80 Ill. 109.

Notice to a creditor of an assignment, where possession is not taken by the assignee, does not affect his right to seize the property: Meeker v. Wilson, 1 Gall. 419.

Allegations and proof should correspond: Harrison v. Nixon, 9 Pet.; Perry on Trusts, 590.

Complainant has a remedy at law: Laws 1875, 69; High on Injunctions, 21; Cooley on Torts, 22.

The property in question is personal property: Kelly v. Austin, 46 Ill. 157; Cooley on Torts, 427, 429, 432.

WALL, J. The appellant filed his bill in chancery, making the appellees parties defendant. The bill alleged that the Mineral City Mining and Smelting Company, a corporation engaged in the business of lead mining in Hardin Co., Illinois, was on the 14th May, 1874, the owner and possessor of a large tract of land, and a large amount of machinery, such as engines, boilers, pumps, belts and ropes, and a lot of mining tools and other implements, and appliances necessary in conducting said business. The engines and boilers were attached

to the soil. On the day above named, said company executed to Herbert Jenney, the appellant, a deed of trust on all its property to secure the payment of a loan of $35,000, which had been authorized by the Board of Directors on the 18th March, 1874. This loan was for the purpose of discharging sundry liabilities of the company, then pressing for payment, and was to be divided into notes of the denomination of $625 and $1,250, to be issued and made payable at the First National Bank of Cincinnati, Ohio, one year after date, bearing ten per cent. interest after maturity. These notes were taken mainly, if not altogether, by the stockholders of the company who were merchants, and other business men in the city of Cincinnati. The deed provided that the property should remain in possession of the company until the maturity of the notes; and that the company might, in the mean time, conduct its business in the ordinary way; but that in the event of default, or of any effort to sell any of said personal property, or in case of the seizure of the same under any legal process, then the trustee might at once take possession. Provision was made for the sale of any or all of the property in case of default, and for the management of the estate until a sale, and for the execution of the trust, the details whereof need not be here set out. At the April term, 1875, of the Hardin Circuit Court, judgments were rendered against the company in favor of Peter Merguard, Joseph Bridges, and Leich & Lemeke for the respective amounts of $194, $653.50 and $61.78, and on the 27th April, 1875, executions upon these judgments were placed in the hands of George W. Jackson, Sheriff of said Hardin county. The sheriff on the 4th of May, indorsed on the executions a levy upon certain steam engines, boilers and machinery. These engines and boilers were stationary, being attached to the soil, and could not be removed without tearing down the walls, and thereby, greatly injuring the property. Notice was served on the sheriff, advising him of the claim of the trustee, and warning him from further proceedings; and it is alleged that he did desist until the plaintiffs in the executions indemnified him against loss, when he determined to proceed, and was threatening to tear down the

Jenney v. Jackson.

walls and remove the machinery.   An injunction was obtained, and the sheriff thereupon desisted.

The defendants answered the bill, admitting the making of the deed of trust, but deny that the notes mentioned therein, are or were *bona fide*, and charge that the transaction was fraudulent; that the sum of $35,000 was not raised; that the deed of trust was intended to hinder and delay the creditors of the company, and alleges that before the maturity of the notes the company was permitted to sell and dispose of a quantity of cord-wood, cut upon the land, and a large lot of old castings and fluor spar, all of which were included in said deed, and would amount to between three and four thousand dollars in value; and alleges other matters, not very important, as evidence of fraudulent purpose on the part of the company and the trustee.

Upon a final hearing the circuit court found that the allegations of the bill were not sustained by the evidence.   The bill was dismissed and damages were awarded upon the injunction bond in the sum of $1,108.20, being the amount of the judgments above referred to, and $200 for attorney's fees.   It is urged in the argument for the appellees that the property in question is personalty, and should be so regarded in disposing of the case.

It is true that in the deed of trust there is a full and complete enumeration of all the various articles of machinery, such as engines, boilers, pumps, belts, ropes, etc., including the property here involved; all of which is referred to as personal property, and it is contended that as it has been so termed in the deed of trust, it must be so treated by the court.   The property levied upon by the sheriff, and which he was enjoined from selling, was "one steam engine and fixtures, and two boilers in the boiler house."   Complainant proved by John O. Smart that this property "was attached to the realty, and could not be removed without injury to the realty."   This was the only proof on the point, and must be deemed conclusive.   Notwithstanding the fact that the property was designated in the deed of trust as personalty, we have no doubt that if it was then attached to the realty, as stated by the witness Smart, it was

not personal but real property, and would have passed with the land by a conveyance of the latter, and to call it personalty was to misdescribe it, in a legal sense.

It is not necessary to refer to authority upon a subject so elementary, and unless the mere fact that it was termed personal property in the deed of trust, changes its legal character, it must be regarded, as it indeed was, a part of the realty, and therefore well conveyed by the deed of trust. The declaration that it was real estate would not have made it so; nor do we appreciate the force of the proposition that it is rendered personalty simply because so referred to and specified by the company in the deed. Unless there is some ground of estoppel whereby the trustee and his *cestuis que trust* are barred from asserting the true character of the property, it will be considered, judicially, as though such designation had not been employed. Is there any principle of estoppel which can fairly be applied here? None has been suggested, and none occurs to us.

It is not apparent how the language of the deed of trust, in this respect, could have misled any one interested to do or refrain from doing anything which he would not have done or forborne under other circumstances. If the property must indeed be regarded as personalty, it is apparent the deed of trust was not so acknowledged as to make it valid under our statute in relation to chattel mortgages.

At the common law all sales and pledges of personal property were deemed invalid, unless the possession accompanied the title. Where a vendor or pledgor retains possession, the transaction is held fraudulent and void. Such has been the ruling from Twynes' case, decided in the reign of Elizabeth, down to the present, by a continuous line of adjudications in all the courts of England and the United States. These decisions are in the main harmonious, all holding that the omission to give possession is evidence of fraud; and in this State it is held conclusive. The statute, however, provides that the mortgagor may retain possession when consistent with the terms of the deed; and the transaction becomes valid and binding as to all persons when the deed is acknowledged before a justice

Jenney v. Jackson.

of the peace of the proper precinct, and so noted in the docket of the justice, and when the mortgage is duly recorded in the proper county.

And while actual notice of such an instrument, not properly acknowledged or recorded, will not render the instrument valid as to third parties, yet if the mortgagee reduces the property to his possession before the rights of others—purchasers or judgment creditors—have accrued, the transaction will become valid and binding as though possession had accompanied the instrument at its execution. Frank v. Miner, 50 Ill. 444. So here, if the trustee got possession under the terms of the deed of trust before the executions become a lien by delivery to the officer, he will hold the property, even though it should be regarded as personalty.

Upon a careful consideration of the evidence, we are inclined to think possession was taken on the 5th of April, 1875. The sheriff received the executions on the 27th of the same month. While some of the witnesses testify that they saw no evidences of a change of possession, yet it is clearly shown that the trustee did all that could be done to that end, and all that was necessary, considering the nature of the property and the circumstances. It was not necessary that he should remove these engines or boilers, thereby producing injury to the property which he was holding in trust. In fact his duty was to protect and preserve the estate, and to that end he was bound to use all such means as were within his power.

The company did surrender possession to him, and he did receive the same and did place an agent in charge. This agent was acting under his orders and was responsible to him.

In such cases the change of managers is all that is practicable. The company owning and mortgaging the property was a corporation acting only through its agents and officials, and though it is true that Clark, who was superintendent before the trustee took possession, remained in the same capacity afterwards, yet we deem this circumstance not important. He was no longer the agent of the company, but was, and so represented himself, the agent of the trustee. Brown v. Riley, 22 Ill. 45; Reed v. Wilton, Ibid, 377. Nothing more could have

been done short of the actual removal of the property, which, as we have said, would have been not only unnecessary, but injurious to the trust estate, and therefore not permissible.

So that whether the engines and boilers in question be regarded as realty or personalty, the trustee will hold them as against these execution creditors if the transaction was *bona fide*, and this brings us to a point urged with much confidence in the answer and argument of the appellees, viz: that the whole scheme was fraudulent because a mere device to cover up the [property of the corporation for the benefit of the stockholders, and that there was in fact no money raised for the benefit of the corporation by means of the deed of trust, and the notes thereby secured. We think the evidence does not sustain the appellees in this position, but that, on the contrary, it strongly preponderates the other way. Without discussing the testimony in detail, it suffices to say that in our judgment the *bona fides* of the transaction is proven, and that as it will serve no useful purpose to recite and analyze the evidence, we need do no more than thus announce the impression it has produced upon us. It is argued, however, that the complainant had his remedy at law, and that therefore equity has no jurisdiction of this controversy. It is suggested that this remedy at law might have been by trial of the right of property under the statute, or by action of trespass or replevin.

It is manifest these remedies would have been inadequate. If the action of the sheriff had gone to the point he threatened, tearing down the brick work and removing the engines and boilers from their attachments, great injury would have followed—probably of an irreparable character. The value of these engines and boilers was greatly enhanced by the fact that they were set up in a position to be used in operating the mines and in preserving the property of the company when mining operations were not in actual process, and it is apparent that their removal under the circumstances would have occasioned unusual damages.

It would be a reproach to the law, if one must submit to such loss and inconvenience as here threatened, and depend wholly upon obtaining relief by the recovery of damages at the

end of litigation. This is not necessary. A court of equity has jurisdiction in such a case and may by the process of injunction prevent the commission of the wrong, and especially will it interfere when the estate is held in trust, and when the trustee seeks its aid in preserving the property. Story's Eq. Jur. Sec. 828, 861; Adams' Eq. 208. Upon the whole case, we are of opinion the decree is erroneous, and it is accordingly reversed and the cause remanded, with instructions to grant the relief sought in the bill and make the injunction perpetual.

Reversed.