Otis v. May.

# ELBRIDGE L. OTIS

## v.

## JOSIAH M. MAY.

*Mortgages—Foreclosure—Fixtures—Order of Court in Vacation—Sec. 72, Chap. 37, Starr & C. Ill. Stat.*

1. Under Sec. 72, Chap. 37, Starr & C. Ill. Stat., a judge may, in the course of foreclosure proceedings, make an order in vacation directing the return of articles severed from the realty and carried away by the mortgagor.

2. In deciding whether a chattel is a part of the realty, reference should be had to the intention of the parties as to the uses and purposes to which it is put.

3. A chattel may become a part of the realty without being attached to the building in which it is placed.

[Opinion filed July 1, 1889.]

IN ERROR to the County Court of Ogle County; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. J. C. GARVER, for plaintiff in error.

In this case the printing presses, paper cutter and the like would hardly be called machinery. While all this property was adapted to the work carried on in the building, they could be used in the same business elsewhere, and without the build-. ing would, when separated—as also would the building without the engine, boiler and presses—maintain their relative value.

· The same case holds that machines separately constructed, adapted to the work carried on in the building, but which could be used in the same business elsewhere, and which are held in position by nails, etc., and belted to the shafting, were chattels.

The property in question was necessary to carry on the business of Otis, which was in the nature of a trade or occupation. They were equally adapted for use elsewhere. In this case, there is nothing in the mortgage indicating any of the property in the building. Where the property, though heavy, can be moved without injury to the building, and is equally adapted elsewhere, it remains chattel property.

In this case it must appear that the engine and boiler were intended to be permanently attached to the building as a part of it. But under no rule of law could the presses which the court turned over to the receiver, and which were merely incidental to the particular business, be held to be a part of the real estate.

A portable furnace and gas fixtures were held not to be a part of the realty. Guthrie v. Jones, 108 Mass. 191; Lathrop v. Bishop, 23 N. H. 66.

A portable iron furnace in a church, as between mortgagor and mortgagee, was held not to be a fixture.

Machines are chattels, even though physically attached to the freehold, where the mode of attachment indicates that it is merely to steady them for their more convenient use. McConnell v. Blood, 123 Mass. 47; Hubbell v. East Cambridge Savings Bank, 132 Mass. 447; Maguire v. Park, 140 Mass. 21.

Mr. M. D. HATHAWAY, for defendant in error.

Otis v. May.

If anything can be settled by repeated decisions of court, then it is certain the boiler and engine and their attachments —the pumps, gauge, pipes, etc.—furnishing the motive power of this establishment, passed by the mortgage. Ewell on Fixtures, 290; Jones on Mortgages, Sec. 446; Ottumwa Woolen Mill Co. v. Hawley, 44 Iowa, 57; Taylor v. Collins, 51 Wis. 123; McConnell v. Blood, 123 Mass. 47; Jenny v. Jackson, 6 Ill. App. 32; Case Mfg. Co. v. Garver, 45 Ohio St. 289; Thielman v. Carr, 75 Ill. 392.

With the growth and development of manufacturing establishments, and the increased use and application of machinery in the process of manufature, there has been a growing tendency on the part of courts to treat these establishments as entireties, and to regard the machinery which is propelled by the motive power, and necessary and essential to the business, as a part of the plant, and passing as real estate or fixtures under a deed or mortgage of the property.

. The rule as settled and held in this State leaves no question that these presses were fixtures, and passed by the mortgage from Otis to May. Palmer v. Forbes, 23 Ill. 301.

C. B. SMITH, J. This was a bill filed by appellee against appellant to foreclose a mortgage. Otis and his wife executed a mortgage to May on the 31st day of December, 1881, on a part of lot 5, block 7, in the city of Rochelle, for $3,000, due in five years, with interest at eight per cent, payable annually. The mortgage provided that if default should be made in the payment of the interest, or any installment thereof, then May, or his assignee, might, at his election, declare the whole amount of the mortgage, principal and interest, due, and foreclose for the same. Default was made in the payment of the interest due December 31, 1884, and May elected to declare the whole sum, principal and interest, due, and filed his bill to foreclose. A default was entered against Otis and his wife and a decree of foreclosure awarded, finding the amount due .complainant to be $3,328. In addition to that, complainant was allowed $100 for solicitor's fees, as provided in the .mortgage. A receiver was also appointed to take possession

of the property and rent it, and report to the court during the pendency of the foreclosure proceedings.

There was a one-story brick building 60x21 feet built on the lot, and it was so built that it would be available for any kind of mercantile business, such as stores, groceries, or the like. It was located upon one of the principal business streets. Otis' business was that of the publisher of a newspaper, as well as doing all such job work as was connected with that kind of business. After the erection of this building he equipped it as a newspaper and printing establishment, putting in an upright portable boiler and engine, and the pumps, pipes, etc., necessary to run his printing presses. He put in two printing presses and connected them with the engine and boiler by proper bands, etc. It appears the printing presses were not attached to the building in any way, simply resting on the floor by their own weight, but that foundations were built under the floor and joists where these presses stood to support them and hold up the floor. Some of the witnesses swear that these presses were bolted to the floor, but the weight of the evidence on that point is that they simply stood on the floor above these special foundations made for them.

There is some controversy in the evidence as to how the boiler and engine were fastened. Appellant and a number of witnesses testify that they rested on the floor or ground, without being attached to the realty, and were kept in place by their own weight. A number of witnesses on the other side testify they were bolted to the floor and ground, and in that way held in place.

Before the receiver appointed by the court took possession of the property Otis removed the engine, boiler and printing presses and all their attachments and connections out of the building in the night time. The receiver afterward demanded possession of these articles from Otis, under his order, but Otis denied his right to have them, and refused to surrender them. An application was thereupon made in vacation to one of the judges of the Circuit Court for an order on Otis to surrender these presses, boiler, engine, etc., back into

the hands of the receiver. This order was resisted by Otis and, upon a hearing before the judge in vacation, he made an order requiring Otis to return this machinery back into the hands of the receiver within five days, and upon his failure to return it, the receiver was directed to seize it and take it wherever he found it. Otis declined to deliver it, and the receiver seized it. The machinery was taken apart and put back in what was called the engine room of the building, which was a small outside room attached to the main building, surrounded by a brick wall. The receiver rented the main building for a grocery store, and it seems to have been a suitable building for that purpose, and has been so occupied since.

At the next succeeding term of the Circuit Court, Otis moved the court to set aside the vacation order, and asked to have the engine, printing presses etc., returned to him, but the court refused to allow the motion. From that order this writ of error is sued out.

The appellant assigns for error, first, that the court had no power to make the vacation order authorizing the receiver to take from him the machinery; and, second, that the printing presses, boilers, engines, etc., were personal property, not attached to nor part of the realty, and that they did not belong to the receiver, nor did they pass by the mortgage.

These are the two questions presented for our consideration. As to the first assignment of error, we think the court had power to make the vacation order directing Otis to surrender the property up to the receiver, and, upon his failure to do so, then to require the receiver to take it wherever he might find it. The 72d section, chapter 37, of the Revised Statutes (Starr & C.), empowers judges in vacation to make all such orders as may be necessary to carry into effect decrees previously entered. We think the order of the judge in this case was justified under that section of the statute.

Under the second assignment of error we think the finding and decree of the Circuit Court was right. After a careful examination of the evidence, we are satisfied that the boiler, engine, presses and paper cutter were a part of the realty, and passed

with the mortgage. It is clear to our minds that the building was erected and equipped for a printing establishment, and with the intention of running it and using it for that purpose. It was so built and fitted up, with all this machinery in it, when the mortgage was made. Without this machinery the building was a mere hull or shell, with but four walls. The evidence satisfies us that it was the intention of Otis when he built and equipped this building for a printing office that the machinery placed in it was to become a part of the realty and be a permanent part of the building, and we are equally satisfied that both parties to the mortgage intended the machinery to be included in the mortgage and to pass as a part of the realty. In determining whether chattels such as are involved in this controversy pass with the realty and become a part of the realty, so as to be covered by a mortgage or deed, reference is to be had as well to the intention of the parties as to the uses and purposes for which the building and the machinery is to be used.

It is not necessary that the chattel should always be fastened or attached to the realty so as to make it a part of it. Ewell on Fixtures, 290; Jones on Mortgages, Sec. 446; Jenny v. Jackson, 6 Ill. App. 32; Thielman v. Carr, 75 Ill. 392; Palmer v. Forbes, 23 Ill. 301; Arnold v. Crowder, 81 Ill. 56.

We think the evidence, under the light of the above authorities, justified the order of the Circuit Court, and that no error was committed in refusing to set it aside at a subsequent term.

*Order affirmed.*