THE NATIONAL BANK OF AUGUSTA *vs.* PRINTUP BROTHERS & COMPANY *et al.*

1. Matters presented and overruled on a motion to dissolve injunction, may be again urged at the proper time on demurrer to the bill, if they are pertinent as grounds of demurrer.

2. If trustees or an assignee of the debtor, for the payment of creditors generally, or for the payment of certain preferred creditors, have title as such to choses in action which a particular creditor is pursuing by garnishment and endeavoring to collect, the interposition of a claim in the garnishment proceeding, under section 3541 of the Code, is an adequate remedy at law in behalf of the trustees or assignee, and the interference of equity by injunction is unnecessary.

3. After a demurrer has been submitted to the court for decision, the absence of the counsel of one of the parties for the balance of the term with leave formally granted, is no reason for withholding judgment on the demurrer when the court is ready to pronounce it.

4. Where a demurrer is properly sustained, the consequences are to be dealt with between the remaining parties in subsequent stages of the cause.

Equity. Injunction. Debtor and creditor. Assignment. Practice in the Superior Court. Before Judge SNEAD. Richmond Superior Court. April Term, 1879.

The Vulcan Iron and Nail Works and other creditors of Bones, Brown & Company, and of J. & S. Bones & Company, filed their bill in Richmond superior court for the benefit of themselves and of any other creditors who might make themselves parties thereto, against the surviving members of said firms, certain preferred creditors, and certain trustees, attacking, upon numerous grounds, two deeds

of trust, made by said firms, conveying certain property in trust to secure certain creditors in the order named, and seeking to make certain defendants who claimed to be creditors, dormant or special partners. Bones, Brown & Co., who did business in the city of Augusta, in Richmond county, was composed of James W. Bones, of Floyd county, and John Brown, John B. Dougherty and John S. Bones, of Richmond county; J. & S. Bones & Co., who did business in the city of Rome and county of Floyd, was composed of James W. Bones and John M. Bowie, of Floyd county, and John Brown and John S. Bones, of Richmond county, the difference between the two firms being, that Dougherty was not a member of J. & S. Bones & Co., nor Bowie a member of Bones, Brown & Co. These complainants had already commenced suits at common law, and this bill was filed in aid thereof.

The trust deeds attacked were executed on April 8th, 1878. One was by Bones, Brown & Company as a firm and as individuals. It was made to Charles S. Arnall and William E. Jackson, Jr., trustees, conveying certain real estate and stock of merchandise in the city of Augusta and county of Richmond to said trustees to secure creditors in the order named. The second was by J. & S. Bones & Company as partners and as individuals, to the same trustees, conveying certain real estate (description left blank) and stock of merchandise in the city of Rome and county of Floyd to secure creditors in the order named. This last deed contained this provision:

"And the parties of the first part hereby sell, assign, transfer and set over to the parties of the second part all their open accounts, bills receivable and other choses in action whatsoever, in trust that the parties of the second part will, as soon as practicable, collect the same and apply the proceeds of such collections to the extinguishment of the above indebtedness. Said parties of the second part having discretion to apply the proceeds of such collections to any class of the indebtedness above set forth exclusively, or to all the classes in such proportions as they may think best to the interest of their trust."

36

The National Bank of Augusta, one of the preferred creditors, answered, and, in lieu of a cross-bill, alleged substantially as follows:

On May 2d, 1878, J. & S. Bones & Co. suspended, and on the 16th of the same month made an assignment to Dougherty, who still holds possession of the property passing thereunder. This assignment covered real-estate in the city of Rome, stock of merchandise, etc., and choses in action. It was equally for the benefit of all their creditors without other preferences than those fixed or recognized by law. Any surplus was to be equally divided between the partners or their legal representatives.

Printup Brothers & Company, and other creditors named, have sued J. & S. Bones & Co., as makers, and Bones, Brown & Company, as indorsers, to the July term, 1878, of Floyd superior court, and have served processes of garnishment upon numerous persons (named, and amongst them the trustees and the agent of the assignee), and upon others who are not now known. The effect of these garnishments has been to put a stop to the collection of the assets of J. & S. Bones & Co., and will so continue unless each and every party is indemnified in making payment, or the assignee and trustees shall come forward at law and interpose claims to the debts. The trustees refuse to make distribution of the assets either of J. & S. Bones & Co. or of Bones, Brown & Co. until the validity and effect of the garnishments on them is determined. The sole object of these creditors is to reach the property and assets passing under said trust deed of J. & S. Bones & Co., and to attack the validity of the deed upon the coming in of the answers, thereby subjecting the trust to great expense in defending said suits away from the residence of the trustees and assignee. These creditors know that no assets are in the hands of the garnishees except what is claimed to pass under said trust deed.

To avoid a multiplicity of suits, to give direction to the trustees, to enable the assets of said firms to be fully realized

and properly applied, to determine the validity of said deeds and the rights of all parties thereunder, and compel all parties to interplead and thus fully protect the trustees, defendant prays that said trustees, or some other fit and proper persons, be appointed receivers, to take charge of and collect all the property of said firms passing under said deeds of trust and not already in the hands of said trustees, and especially all the money and choses in action in the hands of Dougherty, assignee, or of his agent, with authority to sue for and to collect all debts of every description due to J. & S. Bones & Co., or other firm of which the members of that firm had a controlling interest, and which pass under the deed of trust or assignment, or either of them, and that Printup, Brothers & Co., and other named creditors, be enjoined from suing out further garnishment process, and from any further proceedings on those already taken out, and, on the coming in of the answers of the garnishees, from attacking the validity of said trust deeds by motion for judgment, traverse, etc. Further, that they may be restrained from doing any act which may tend to prevent the delivery over of any money or property under either instrument, etc., and generally, from taking any steps other than coming into this court and asserting any rights in the premises.

The chancellor appointed the trustees receivers and granted the injunction as prayed for, reserving the right to Printup Brothers & Company to move its dissolution. Such motion was made upon substantially the following grounds:

1. Because the injunction was improvidently granted.

2. Because the remedy at law is ample and complete, and the common law court has first acquired jurisdiction.

3. Because there are no equitable charges in said cross-bill sufficient to authorize the granting of said injunction.

4. Because Richmond superior court has no jurisdiction over the parties or causes in litigation in Floyd county under the facts as developed by the pleadings.

The motion was overruled, and Printup Brothers & Company filed their exceptions *pendente lite*.

At the succeding term of the court, April term, 1879, Printup Bros. & Co. demurred to the cross-bill upon substantially the same grounds as were embraced in their motion to dissolve. The briefs of counsel for the respective parties were submitted to the chancellor, who reserved his decision. At the time the judgment was rendered, the counsel for the complainant in the cross-bill, the National Bank of Augusta, was absent from court under leave of absence formally granted. This judgment was rendered on July 16, 1879, and sustained the demurrer. The National Bank of Augusta excepted, and assigns error as follows:

1. Because the court sustained the demurrer on any ground set forth therein.

2. Because the grounds taken were *res adjudicata*, having been passed upon on the motion to dissolve the injunction, and an interlocutory bill of exceptions having been filed by Printup, Brothers & Co. to the judgment rendered thereon.

3. Because the court failed to determine as to the disposition of the funds then in the hands of the receivers, and paid to them under its order by the garnishees in the suit at law of Printup, Brothers & Co., or to authorize the receivers to intervene in any way in Floyd superior court to test the title of the trustees, Jackson and Arnall, or of the assignee, John B. Dougherty, or of the receivers themselves to the funds.

This case is full of other questions made by the pleadings, but not yet passed upon by the court below. The effort has been made by this report to present the litigation simply as it affected the National Bank of Augusta and Printup, Brothers & Co. on the hearing of the demurrer to the cross-bill.

FRANK H. MILLER, for plaintiff in error.

DANIEL S. PRINTUP; DAVENPORT JACKSON, for defendants.

BLECKLEY, Justice.

The case which is here is but a small twig from a very large tree. The sole plaintiff in error is the National Bank of Augusta, and Printup, Brothers & Co., are the only defendants in error. The plaintiff in error was a party defendant to the original bill below, but the defendants in error were not parties to that bill on either side. They were brought into court as defendants, with others, to a cross-bill built up in the answer which the plaintiff in error filed to the original bill. On a prayer for injunction contained in this cross-bill, Printup, Brothers & Co. were enjoined from doing various things, among them, from prosecuting certain common law proceedings to which they were parties, but to which the National Bank of Augusta was no party. The injunction was but interlocutory, and they moved to dissolve it on certain grounds, which motion being denied, they excepted *pendente lite*, and it remained operative until the time arrived for demurring to the cross-bill by way of general defense to the whole relief sought against them. They then filed a demurrer, embracing substantially the same grounds on which their motion to dissolve the injunction had been predicated. When the court came to adjudicate upon the demurrer, the same was unconditionally sustained and the cross-bill was, as to them, dismissed. This, and only this, is the subject-matter of the present writ of error.

1. In behalf of the plaintiff in error ·it is insisted, first, that any and all matters which were adjudged insufficient to dissolve the injunction when the motion for dissolution was determined, become *res adjudicata* with respect to the subsequent demurrer, no less than with respect to the motion; and that what is not cause for dissolving a temporary injunction is, *a fortiori*, no cause for denying all relief whatsoever, and dismissing the bill at the hearing of the case on demurrer. If this be a correct position, it would follow that in all cases where a temporary injunction is

granted, and the grant is acquiesced in, no subsequent de-
murrer to the whole bill could be sustained. An injunc-
tion cannot be ordered for anything which is not apparent
on the face of the bill, and the mere grant of an injunction
is an adjudication that the bill is sufficient to warrant it.
Whether the defendant appears or not, makes no difference
as to the binding nature of this adjudication, for under the
present practice established by statute in this state, he has
to be notified of the application, and of the time and place
when and where it will be heard; and the object of the
notice is, that he may appear and resist the application.
According to every principle of *res adjudicata*, a defend-
ant duly served with the prescribed notice is as much bound
by what is adjudged against him on the plaintiff's pleadings,
where he fails to appear, as he is where he appears and calls
in question the sufficiency of those pleadings. But what
court has ever held, or ever can hold, that the mere grant
of a temporary injunction, with or without appearance and
resistance by the defendant, will, if not carried to a review-
ing court and there reversed, conclude the defendant upon
the merits of the bill should he afterwards, and in due time,
demur? And if the defendant is not cut off from demur-
ring by the mere grant of the injunction, why ought he to
suffer this consequence if the grant be followed by an inef-
fectual motion to dissolve? Once adjudicating the suf-
ficiency of the bill for a temporary injunction ought, it
would seem, to settle the matter as firmly as twice adjudi-
cating it. Where the doctrine of *res adjudicata* applies at
all, it is not less applicable after a first judgment, unre-
versed, than it is after a second to the same effect. The
truth is, that the purpose of an interlocutory injunction is
wholly provisional; it is preliminary and preparatory; it
looks to a future and final hearing, more deliberate, solemn
and complete than any which has been had, and while con-
templating what the result of that hearing *may* be, it by no
means forestalls it, or settles what it *shall* be. Under such
an injunction, the defendant's free agency is suspended but

not terminated; though paralyzed tempoiarily, it does not follow necessarily that his paralysis is to become permanent and incurable. In one word, there is, with respect to the merits of the main case, nothing *final* either in granting or keeping on foot an interlocutory injunction; and the rigid, stationary condition which any proper conception of *res adjudicata* involves, arises out of judgments only which are final in their nature. High on Inj., §§3, 4, 5; 21 Ill., 605; Freeman on Judg., §251; 4 Bibb, 556; 22 Eng. Ch. R., (2 Phillips) 597; 41 *Ga.*, 544; 17 *Ib.,* 558 (12), 249; Code, §§3220, 3223. Somewhat *contra* in bearing, 5 Martin, N. S., 120; 8 Rob., La., 200; 25 Ill., 257.

2. Among the grounds of the demurrer are that the cross-bill has no equity as against Printup, Brothers & Co., and that there is a complete remedy at law. All that Printup, Brothers & Co. have done they had a legal right to do, and we do not see that they have acted contrary to equity, or good conscience. They sued their debtors in a court having jurisdiction, and garnished certain persons to appear and answer in connection with that suit. If the assests which they seek to reach by these garnishments do not belong to their debtors, but to certain trustees and an assignee, why should not the trustees and the assignee claim them under section 3541 of the Code? Among the garnishees are the trustees themselves, and the attorney or agent of the assignee. Why should it devolve on the National Bank of Augusta to bring Printup, Brothers & Co. into equity, in order to aid the trustees and the assignee in the performance of their duties? It is not alleged that the trustees are insolvent, and if they fail in their duty, they can, it is to be presumed, respond to those who may be injured. To break up lawful proceedings commenced by Printup, Brothers & Co. in Floyd, the county in which they themselves reside, and force them to take part in a pending suit in Richmond county, in which they have no wish to participate, is a very strong exertion of power. Nothing so very vigorous and energetic should be done without a clear necessity for it.

And be it observed, that none of those who are garnished, not even the trustees or the assignee, are in this court, asking that it shall be done. We think the court below did quite right in sustaining the demurrer, and allowing Printup, Brothers & Co. to go without a day.

3. The leave of absence granted to brother Miller was no cause for withholding judgment on the demurrer until his return, or until his leave expired. The demurrer having been argued and submitted before the leave was granted, the work of counsel was finished, and in that which remained for the court to do, the presence or absence of counsel would make no difference. According to the usual course of practice, as we understand it, there could have been no reasonable expectation that the court would delay the mere announcement of a judgment because the counsel of one of the parties was absent on leave.

4. Nor was there any error in not making some further order in connection with sustaining the demurrer, and dismissing the cross-bill as to Printup, Brothers & Co. The entire hearing was upon the demurrer to the cross-bill, and the consequences of sustaining the demurrer were not for adjustment as a part of the judgment, but were for the remaining parties to cope with in subsequent stages of the cause.

Judgment affirmed.