BLEYER *et al. vs.* BLUM & COMPANY.

1. A party cannot be prohibited by injunction from going beyond the limits of the state, and carrying with him his own property or the property in which another is legally or equitably interested.   In such a case, he may be restrained from doing these things by a writ of *ne exeat.*

(*a.*) In this case there was a rule to show cause why the writ of *ne exeat* should not issue.   No order was granted for it to issue, and it never was, in fact, issued or served; but the judge, under a misapprehension, directed, on the hearing, that when the defendant should comply with certain conditions prescribed, "the writ of *ne exeat* heretofore granted, be revoked and annulled, but that it remain in full force, unless the conditions of this order be fully complied with."   These conditions were, that the defendant should turn over to the receiver appointed, all the property embraced in the assignment not sold, and account to him for the proceeds of such as had been sold, or should give bond with security to the sheriff, in the sum of four thousand dollars, for the forthcoming of such proceeds to be disposed of on final order, and should also turn over to such receiver all the property of the assignor then in his possession passing under the assignment:

*Held,* that the conditions imposed by the chancellor were variant from, and more onerous than, those imposed by law.   He may, in his discretion, require a larger bond, but he cannot impose other and different conditions.

(*b.*) If the defendant fails or refuses to replevy the property, the court may, in his discretion, make such disposition of it as shall appear most advantageous to all parties; but the incongruity of appointing a receiver and ordering the property to be turned over to him, and, at the same time, requiring bond from the defendant for its forthcoming, is apparent; especially before the writ has been ordered, issued or served, and before an opportunity has been afforded to the defendant to relieve himself upon the terms prescribed by law, with a failure on his part so to do.

(c.) There is no law authorizing, in express terms, an order to show cause why the writ of *ne exeat* should not issue. This practice applies to injunctions, the appointment of receivers, the granting and refusing of applications for *mandamus* absolute, and other extraordinary remedies in equity, and must be observed as far as applicable; but the application for a writ of *ne exeat* is in its nature *ex parte*, and its very purpose would be defeated if issued upon notice to the defendant.

2. So much of the chancellor's order as relates to the writ of *ne exeat* and the proceedings had thereunder, including the bond given for the forthcoming of the proceeds, etc., must be set aside, and the defendant must be released from custody. The order appointing a receiver is affirmed, and, if not already complied with, can be enforced by attachment for contempt.

3. The order should be further modified by striking therefrom all expressions of opinion as to the fraudulent conduct of parties, and the effect upon the assignment of reserving a benefit for the assignor or his wife. These are the main issues made by the bill and answer, and should not be passed upon in this preliminary proceeding, but should be reserved until the final hearing. To avoid apprehended consequences from such expressions, that portion of the order is directed to be stricken.

. April 24, 1883.

Practice in Superior Court. *Ne exeat.* Injunction. Receiver. Extraordinary Remedies. Before Judge RONEY. Richmond County. At Chambers. March 2, 1883.

Max Brown made an assignment to Bleyer for the benefit of creditors, giving preference first to the Bleyer Distilling Company, and afterwards to Blum & Company. The latter filed a bill charging that the deed of assignment was void, because of a reservation of a benefit to Brown thereunder; that the indebtedness of Brown to the Bleyer Distilling Company was much less than it was pretended to be; that it was fraudulently placed at a higher nominal figure, by agreement between Brown and Bleyer; that Bleyer was a non-resident; that he had taken possession under the deed of assignment, and was making sales; that he had paid over $1,600 by telegraphic money orders, and $500 by bills of exchange, to the Bleyer Distilling Company; that he was seeking to remove the balance of the

property beyond the limits of the state; that he had forced sales and otherwise acted improperly as assignee; that he was seeking to defraud complainants by converting the goods into money and placing the same beyond the jurisdiction of the courts of this state; that there was not enough property to pay the pretended preferred claim of the Bleyer Distilling Company and the claim of complainants, and unless the sale of the remnant of the property was restrained, there would not be enough to pay complainants, and unless the removal was restrained, complainants' claim would be defeated. The prayer was for injunction to restrain the removal or further disposition of the property by Bleyer, to restrain the removal or sending any of the proceeds of sales out of the state; that a writ of *ne exeat* might issue, restraining Bleyer from leaving the state and removing the proceeds therefrom; that Bleyer should be removed as assignee, and a receiver be appointed to take charge of the property; that Blum & Company and the Bleyer Distilling Company might interplead and determine the amount actually due the latter; that a mortgage held by complainants be foreclosed, and the lien of their claim and its priority be established; also for general relief. Discovery was waived.

The answers denied the leading allegations in the bill.

On the hearing, the affidavits in support of the bill and answers, were conflicting. It is unnecessary to set out their contents in detail. Only one fact set up in the answers and affidavits need be stated, viz: that Brown made a bill of sale of certain property to Bleyer, and the latter then made a bill of sale of the same property to Mrs. Brown. The amount in cash and goods delivered to Mrs. Brown was $1,600, and this amount was determined upon on the basis of the exemption to which the debtor's wife would have been entitled, under the laws of Georgia. Defendants insisted that a member of complainants' firm took part in this arrangement. The other facts and rulings of the court are sufficiently detailed in the decision.

ADOLPH BRANDT; F. H. MILLER, for plaintiffs in error.

FOSTER & LAMAR, for defendants.

HALL, Justice.

The prayer of the bill filed in this case was for an injunction, writs of *ne exeat*, and the appointment of a receiver; it was sanctioned on the 28th day of December, 1882, and the order required the defendants to show cause before the judge of the superior court of the circuit, at such place as he might designate, on the 11th day of January, 1883, or as soon thereafter as the same could be heard, why the prayer of the complainants, and especially so much thereof as asks for the appointment of a receiver and the issuing of the writs of injunction and *ne exeat*, should not be granted. At the same time a temporary restraining order was passed, inhibiting the defendant, Bleyer, under a penalty of ten thousand dollars, from changing the status of the property in litigation, etc., and restraining him, under a like penalty, from leaving the jurisdiction of the state, or removing therefrom the said property or any of the proceeds thereof.*

On the same day this bill was filed in the office of the clerk of the superior court of Richmond county, a subpœna was attached thereto, and copies of the bill, restraining order and subpœna were served on the defendant Bleyer personally. It will be perceived that this sanction did not order the writ of *ne exeat* to issue, nor was it in fact issued.

After hearing this application, the judge, on the 2d of March, 1883, after reciting such facts as he deemed material and prefacing his decree with these remarks:

"Without going into the details of the charges and proofs submit-

---

*This order was passed by the Hon. Claiborne Snead; the judgment stated further on, to which the bill of exceptions was filed, was rendered by Hon. H. C. Roney, who had succeeded Judge Snead before the hearing.

ted, which give to the defendants' position an extremely unsavory and fraudulent look, I am satisfied that the reservation of the property included in the bills of sale from Brown to Bleyer, and Bleyer to Mrs. Brown, really for Brown, rendered the assignment null and void, and in every possible aspect of the case, the property ought to be put in the hands of a proper party, to hold subject to the claim of whoever may be entitled thereto by the verdict of the jury, upon the final trial of the case,"

Ordered,

" That Samuel T. Bleyer be, and he is hereby removed from the position of assignee under said alleged assignment. That F. W. Capers, Esq., is hereby appointed receiver, to receive from Samuel T. Bleyer the proceeds of all sales heretofore made by him of property of said Brown, taken possession of by said Bleyer, under said assignment, and all such property not heretofore sold by said Bleyer, who is hereby required to pay over said proceeds of sales of said property heretofore made, and to turn over all property now on hand to said receiver, to be by him held subject to the further order of this court. It is further ordered, that upon the accounting as aforesaid with said receiver by turning over the proceeds of sales heretofore made, or by giving a good and solvent bond to the sheriff of Richmond county for the forthcoming of said proceeds, to be disposed of by this court, in a bond of four thousand dollars, on final order, and by turning over all property of M. Brown now in his possession, passing under said assignment, that the writ of *ne exeat* heretofore granted against said Samuel T. Bleyer be revoked and annulled ; but that it remain in full force, unless the conditions of this order are fully complied with."

Immediately upon the passage of this order, what purports to be a writ of *ne exeat*, and reciting this action of the judge as authorizing it, was issued by the clerk and placed in the hands of the sheriff for execution, who returns that he arrested Bleyer, under and by virtue of the foregoing order, and also by virtue of the writ, and Bleyer refusing to give bond, or to deliver the property or proceeds of sale as in said order and writ designated, he took him into custody.

1. This proceeding and the action under it is not only irregular and anomalous, but is in direct opposition to plain and well settled rules of law. A party cannot be prohibited by injunction from going beyond the limits of

the state, and carrying with him his own property, or the property in which another "is legally or equitably" interested. In such a case he may be restrained from doing these things by a writ of *ne exeat.* Code, §3226, par. 7. A writ of *ne exeat* must be granted by a judge of the superior court (*Ib.*, §247, par. 2), except in cases of emergency (*Ib.*, §3231), and it is something separate and distinct from an injunction. It is a writ to arrest the body of the defendant and hold him in custody—2 Daniell's Ch. Pr., 1710— (form of writ, 3 *Ib.* 2328), and where proper, to seize the property in question and keep it safely, "until he shall relieve himself, or his property, or the specific property, from the restraint thereby imposed, by giving bond in double the value of the plaintiff's claim, with good security, to the officer serving the process, for the forthcoming of each or either (according to the tenor of the writ), to answer to complainant's claim, or to abide by the order and decree of the court." Code, §3228. Here there was a rule on the party to show cause why the writ should not issue as prayed. There never was an order to issue the writ, and none in fact was issued or served, and the judge was laboring under misapprehension when, in his order on the hearing of the rule to show cause, he directed that when the defendant shall comply with certain conditions therein prescribed, "the writ of *ne exeat* heretofore granted be revoked and annulled; but that it remain in full force, unless the conditions of this order be fully complied with." These conditions were that the defendant should turn over to the receiver appointed all the property embraced in the assignment not sold, and account to him for the proceeds of such as was sold, or should give bond with security to the sheriff in the sum of four thousand dollars, for the forthcoming of such proceeds to be disposed of on final order, and should also turn over to such receiver all the property of the assignor then in his possession passing under said assignment. Now, in case the writ had regularly issued and been served by the arrest of the defendant, it

was his right, as we have seen, to relieve himself and the property from restraint by giving bond and security to the officer serving the process in double the value of complainant's claim, conditioned either for the forthcoming of property to answer said claim, or that he should abide by the order and decree of the court.

The defendant was never served with the process, and never had an opportunity afforded him of relieving himself or the property from restraint, by complying with the terms prescribed by this law. The conditions imposed by this order of the chancellor were widely variant from these, and far more onerous. It is true that, by this section of the Code (3228), the judge granting the writ might, in his discretion, require a larger bond, but it does not thence follow that he is authorized to impose other and different conditions. If the defendant fails or refuses to replevy the property, the court may, in its discretion, make such disposition of it as shall appear most advantageous to all parties. Code, §3229. The incongruity of appointing a receiver and ordering the property to be turned over to him, and at the same time requiring bond from the defendant for its forthcoming, is apparent; especially in doing this before the writ has been ordered and issued, and before it has been served, and an opportunity afforded the defendant to relieve himself upon the terms of the law; and before, under the required conditions, he has failed and refused to replevy the property.

These plain deviations from the provisions of the law do not end here. There is no law authorizing in express terms an order to show cause why the writ of *ne exeat* should not issue. The chancery proceedings to which this practice applies are injunctions (Code, §3211); and the provisions relating thereto are extended to the appointment of receivers, the granting and refusing applications for *mandamus* absolute, or other extraordinary remedy in · equity, and must be observed to the extent applicable. Code, §3215 (a), 3216. The very purpose of the writ of *ne exeat*

would be defeated, if it issued upon notice to the defendant; hence "the application is made by an *ex parte* motion, and may be made before service of a copy of the bill; the reason of which is, that the giving notice might operate to occasion the mischief which the writ is intended to prevent, by giving the party an opportunity of removing from the jurisdiction." 2 Daniell's Ch. Pr., 1706. This wise precaution is in a very marked manner enjoined by our Code, §3231, which authorizes the writ to issue without the sanction of a judge, upon the affidavit of complainant that it cannot be obtained in time to remedy the mischief.

2. For these several reasons, so much of this order as relates to the writ of *ne exeat*, and all the proceedings had thereunder, including the bond given for the forthcoming of proceeds, etc., must be set aside, and the defendant released from custody. The order appointing a receiver is affirmed, and if there has not already been a compliance therewith, it can be enforced by attachment for contempt.

3. The order, we think, should be further modified by striking therefrom all expression of opinion as to the fraudulent conduct of parties, and the effect of reserving a benefit for the assignor, or his wife, upon the assignment. These are the main issues made by the bill and answer, and had better not be passed upon, in this preliminary proceeding, upon an investigation necessarily incomplete and partial; but should be reserved until the final hearing, at which all the means for a full hearing by the court and jury can be commanded, and more justice may be done the parties by a fuller investigation of the case in its various bearings.

It is urged here, that such an expression of opinion may, in the further progress of the case, be insisted upon as an adjudication of the questions to which it applies, or, at all events, that it places the party against whom it is expressed at a disadvantage upon the final hearing. To avoid these consequences, we think the better practice is to re-

frain from the expression of such views; and that this portion of the order should be stricken, and in conformity with our rulings at the present term in two cases not yet published. ( *Wardens and Vestry, etc., vs. The Mayor, etc., Savannah;* and *Strickland vs. Griffin*), we so order and direct.

For the foregoing reasons and others which will readily suggest themselves, we do not deem it proper to consider any of the many other questions presented by this voluminous record.

Judgment reversed.