THE OLD HICKORY DISTILLING COMPANY *et al. vs.* BLEYER *et al.*

1. A demurrer to a bill could not be made and disposed of in vacation and before the term of court to which the bill was returned had arrived; and although it could then be used as cause shown against the grant of an injunction or *ne exeat*, or the appointment of a receiver, it stood over for a hearing at the term to which the bill was returned. Under the law, it could only be heard then, or thereafter upon notice or order that it be heard in vacation

(*a.*) Although a demurrer for want of equity may have been urged as cause against the grant of an injunction, and although the injunction may have been granted, and that judgment may have been affirmed by this court, yet this does not preclude the defendants from insisting on its demurrer in term, and does not estop the court from passing on it.

(*b.*) Where the order dismissing the bill was general, and the judgment was not put on any particular ground, if any one or more of the grounds taken requires the decision, it will be affirmed.

(*c.*) The allegations of this bill are not sufficient to show the necessity for the interposition of a court of equity.

(*d.*) It would have been proper, if not necessary, to make the creditors preferred by the assignment parties to the bill, where the preference given to them was alleged to have been fraudulent.

(*e.*) On the hearing of a bill which prayed both for an injunction and the grant of the writ of *ne exeat*, an order, refusing the latter writ, provided the defendant would give a bond, with security, to make good any judgment found in favor of the complainant, was error.

(*f.*) That an assignment is void because no sworn schedule of the effects of the assignor is attached was equally available to set it aside by legal proceedings as by those in equity.

(*g.*) The bill, being dismissed on demurrer, carried with it the interlocutory orders made thereon and the bond given in compliance with such orders; and an order directing the writ of *ne exeat* to be discharged and the bond to be cancelled, if not superfluous, merely embodied the inevitable legal conclusion from the dismissal.

(*h.*) The writ of *ne exeat* will only issue where the defendant is removing or about to remove himself or his property or the specific

property to which complainant claims title or in which he claims an interest; it must appear that no adequate remedy is afforded at law, and the bill must be verified by one or more of the complainants. An affidavit by an agent or attorney, or by complainants themselves, that the allegations are true to the best of affiant's knowledge and belief. is insufficient.

February 7, 1885.

. Equity. Practice in Superior Court. Injunction and Receiver. Demurrer. Judgments. *Ne Exeat.* Assignments. Before Judge RONEY. Richmond Superior Court. October Adjourned Term, 1883.

To the report contained in the decision, it is necessary to add only the following: The Old Hickory Distilling Company *et al.* filed their bill in Richmond superior court on December 13, 1882, alleging that they were creditors of Max Brown, who had been doing business under the name of M. Brown & Company, and were so admitted to be in the deed of assignment of said Brown; that their debtor, who had been carrying on a liquor and cigar business, had within the past twelve months bought over $20,000.00 worth of stock; that he had made no sales on credit and lost nothing from bad debts; that on December 4, 1882, Brown executed a pretended deed of assignment to Samuel T. Bleyer of his stock and accounts, alleging the same to be all the property owned, possessed or held by him, for the benefit of his creditors, including complainants, preferring therein the Bleyer Distilling Company for $5,500.00, L. Blum & Company for $2,805.00 and Pfeifer & Company for $500.00, all non-residents and of unknown financial ability; that Brown demanded and received of Bleyer, as a consideration for and condition precedent to the execution of the assignment and preference to the distilling company, payment of the sum of $1,000.00, and that this sum was in the possession of Brown at the time of the execution of the pretended assignment; that the sum of $500.00 was paid by Blum & Company for like purpose at the same time, and this also was in the possession of Brown at the time of the execution aforesaid;

that neither these sums nor any part of them were in-cluded in the schedule and inventory annexed to the as-signment; that Brown had other sums of money, a large quantity of cigars and about twenty barrels of liquor in his possession and ownership at the date of the assignment and not embraced therein; that Bleyer has taken posses-sion of the assigned property, sold large portions of it, and will pay the proceeds to the alleged preferred creditors un-less restrained from so doing; that the assignment is fraud-ulent and void, as also are the preferences; that Bleyer therefore holds the property as a trust fund for the equal payment of all the creditors of Brown without preference; that unless restrained, Bleyer, who is a non-resident, as are all the preferred creditors, will sell the property and pay over the proceeds to them, leaving complainants reme-diless. Wherefore they prayed that Bleyer be enjoined from making further sales of the property and from paying out any proceeds therefrom to the preferred creditors un-der the authority of the assignment, or in any way dis-posing of the same in execution thereof; that a receiver be appointed to take charge of this and the other property held by Brown; for writ of *ne exeat*, preventing Bleyer from removing himself or any of the property or its pro-ceeds beyond the jurisdiction of the state, and for general relief.

The bill was sworn to by one of counsel for complain-ants, who stated that the facts therein recited, so far as they related to his own acts and deeds, were true, and so far as they related to the acts of others, he believed them to be true. The order of December 13, 1882, was passed by Judge Snead; the order dismissing the bill and dis-charging the *ne exeat* by his successor, Judge Roney.

FOSTER & LAMAR, for plaintiffs in error.

ADOLPH BRANDT; FRANK H. MILLER, for defendants.

HALL, Justice

On the 13th day of December, 1882, his honor, Judge Snead, of the Augusta circuit, ordered the defendants to show cause before him, at chambers, on the 29th day of that month, "why the prayer of the complainants, and especially so much thereof as prays the appointment of a receiver and the granting of the writs of *ne exeat* and injunction should not issue and be granted." The defendants did not await the arrival of the day appointed for hearing the cause, but, on the 15th day of December, notified the complainants that, on the 26th day of the month, they would move the presiding judge to dissolve the temporary injunction and the restraining orders passed by him in the cause. On the latter day, they appeared and demurred, and by their demurrer showed for cause why these orders should be vacated and set aside; that complainants had not by their bill "made or stated such a case as does or ought to entitle them to the relief thereby sought and prayed for against defendants or either of them." Upon hearing this irregular and altogether unusual application, the judge passed an order "that the injunction be dissolved *pro tanto*, except as to the writ of *ne exeat;* that is to say, the defendant, Bleyer, will give bond in the sum of one thousand dollars, payable to complainants, to make good any judgment obtained by complainants, upon doing which the writ of *ne exeat* is refused." Under this unprecedented order, the defendant, on the 29th day of December, gave the bond required by it, with one B. Dub as his security; thereafter, on the 13th day of January, 1883, the defendant, Bleyer, took a bill of exceptions to this decision, and brought it by writ of error to this court, and when reached in its order on the call of the docket, he failing to appear and prosecute, it was for that reason dismissed, and the judgment excepted to was thereby affirmed. At the return term of the bill, the defendant, Bleyer, appeared in the superior court and

demurred to the same, upon the following additional and special grounds

(1.) There was a misjoinder of complainants.

(2.) For want of proper parties, the preferred creditors under the assignment from Brown to Bleyer not being made defendants.

(3.) That complainants had an adequate remedy at law.

(4.) For multifariousness as to the relief prayed.

(5.) That no copy of the assignment was exhibited and no reason given for failing so to do.

(6.) Because the character of the indebtedness of the assignor to complainants, which was alleged not to be due, was not set forth.

At a subsequent day in the same term, a motion in writing was made by Bleyer "to dismiss the bill, or in default thereof to vacate the writ of *ne exeat*, and to cancel the bond given thereunder, and to discharge the surety to the same,"

(1.) Because both complainants and defendant, Bleyer, were at the time of the filing of the bill, and have since been, non-residents of the state, and in view. thereof, no writ of *ne exeat* could issue at their instance and against said defendant, under the laws of this state.

(2.) Because the bill is not so verified as to authorize the issuing of this writ, the affidavit being only upon information and belief, the law requiring the statements and charges in the bill to be sworn to positively.

The demurrer and motion were heard together, and after consideration and argument, the presiding judge sustained both, and ordered the bill to be dismissed, and the writ of *ne exeat* directed by his predecessor in office to be discharged and the bond filed pursuant thereto to be cancelled and set aside. This decree was excepted to by the complainants; various errors were alleged to exist therein, and upon this assignment of errors, it is brought to this court for review.

1. The complainants insist that the matters involved in the demurrer, as amended, and in the motion were adjudicated in their favor by the decision of the judge upon the first showing made by the defendant in relation thereto, and by the dismissal of the writ of error excepting to the same by this court, which was an affirmance of that judgment. This presents the point as to how far the special matters set forth in the second demurrer and in the motion were involved in the first. The first demurrer was general, and asserted that there was a want of equity in the bill to entitle the complainant to the relief prayed; it set forth none of the special grounds of defence insisted upon at the return term of the bill. It was made in vacation, and before the term of the court to which the bill was returned had arrived. It is well settled that the demurrer could not be finally disposed of at that time and could only be used as cause shown against the issuing of the processes prayed; it stood over for a hearing at the term to which the bill was returned; under the law it could only be heard then, or thereafter upon notice or order that it be heard in vacation. *Murphy vs. Tallulah Fire Engine Company*, 72 *Ga.*, 196. Although the judge, on the motion to dissolve the injunction, must necessarily have considered that there was equity in the bill, as appears from the order he made in the face of the denial of that fact, set up in the general demurrer, yet that judgment, although it was affirmed by this court, upon exceptions taken to it, will not preclude the defendant from insisting upon his demurrer in term, and does not estop the court from passing on it. In the *National Bank of Augusta vs. Printup Bros. & Co. et al.*, 63 *Ga.*, 570, it was held that "matters presented and overruled on a motion to dissolve an injunction may be again urged, at the proper time, on demurrer to the bill, if they are pertinent as grounds of demurrer." On page 576 of this case, it is said "that the purpose of an interlocutory injunction is wholly provisional; it is preliminary and preparatory; it looks to a future and final hearing,

more deliberate, solemn and complete than any which has been had, and while contemplating what the result of that hearing may be, it by no means forestalls it or settles what it shall be." Again, *Ib.*, 577, it is said " there is, with respect to the merits of the main case, nothing final, either in granting or keeping on foot an interlocutory injunction; and the rigid, stationary condition which any proper conception of *res adjudicata* involves arises out of judgments only which are final in their nature." In 68 *Ga.*, 466, it is declared that, " on the application for an injunction at chambers, the sole question is the grant or refusal of that writ    No judgment overruling the demurrer was then rendered, and none could have been rendered (58 *Ga.*, 184) on the mere application for injunction."

It follows, therefore, that the general demurrer, together with such grounds of special demurrer as were added, was in order for a hearing at the return term of the bill, and that the previous interlocutory proceedings at chambers interposed no bar to a consideration of the questions thereby raised. The order dismissing the bill upon the demurrer was general; it was not put upon any particular ground, and whether all the grounds were well taken is not material, if any one or more of them requires the decision.

We cannot say, under our rulings in *Cohen & Co. vs. Morris & Co.*, 70 *Ga.*, 313, and *Crittenden Bros. and others vs. Coleman & Co. et al.*, *Ib.*, 293, that this bill contained enough to authorize a court of equity to take cognizance of it, or that a court of law was incapable of affording the complainants an adequate remedy. Few or none of the special circumstances are set forth in this bill, which were considered essential in those cases to maintain the jurisdiction of the court of equity; it does not allege that the goods assigned were those furnished by the complainants, and that they were obtained by fraudulent and false representations of the solvency of the assignor. Neither the particulars of the indebtedness from him to the complain-

ants nor a copy of the assignment attacked is exhibited or set forth to or by the bill, and the 5th and 6th grounds of the demurrer specifically claim, and properly so, that it is wholly insufficient in this respect.

It would have been proper, too, if not necessary, to make the creditors preferred by the assignment parties to the bill; it is not known who they were, and the preference given to them is alleged to have been fraudulent. When an issue is presented so vitally affecting their rights, it should not be passed upon without giving them an opportunity to be heard. They surely would not be bound by a decree rendered behind their backs. That the relief prayed was contradictory and incongruous was decided by this court in a case growing out of this assignment. *Bleyer vs. Blum et al.*, 70 *Ga.*, 558. We there held that the complainant was not entitled to a receiver, and at same time to the writs of injunction and *ne exeat;* that the order appointing the receiver and requiring the assignee to turn over to him the effects assigned was inconsistent with the writ of *ne exeat* awarded at the same time and the bond he was required to give thereunder. In this case, there was no order either for an injunction or receiver, and none for the *ne exeat*, but it was directed that it should not issue if the defendant gave bond and security to make good any judgment found in favor of the complainants. That this mode of proceeding can be substituted for the bond prescribed by the statute upon the arrest of the defendant, under the writ of *ne exeat*, we are not prepared to hold; the bond ordered was not the one that the defendant was required to give to relieve himself from the arrest, but it imposed other and more onerous conditions than those prescribed by law, as was also decided in *Bleyer vs. Blum.* The only ground set forth for invalidating the assignment was the want of a sworn schedule of the effects of the assignor annexed thereto and recorded therewith, as prescribed by law, and this ground was equally available to set it aside by legal proceedings as by those in equity.

The bill was properly dismissed on demurrer, and the dismissal carried with it the interlocutory orders made thereon, and the bond given in compliance with such orders. The effect of the decree was to extinguish the bond and release the surety; so that the latter part of the order to that effect, if not superfluous, merely embodied the inevitable legal conclusion, and was doubtless inserted *ex abundanti cautela.*

While this dispenses with the consideration of the questions made by the motion filed with the demurrer, it may not be improper to remark that, under the provisions of the statute authorizing the writ, the allegations of this bill made no case for a *ne exeat,* under the Code, §§3226, 3227. It may issue, according to sub-sec. 7 of §3226, at the instance of any person interested legally or equitably in any property about to be removed, where no adequate remedy is afforded at law, and the following section expressly requires that the applicant for the writ shall show that no adequate remedy is afforded at law, and that the defendant is either removing, or about to remove, himself or his property, or the specific property to which the complainant claims title or in which he claims an interest. In order to obtain this harsh and summary remedy, " the allegations of the bill must be verified by one or more of the complainants, and the judge may, in his discretion, require the complainants to give bond and security for the payment of any damages which the defendant may recover of him for suing out the writ before granting any order for issuing the same, and may require a verification by all or any of the complainants. Code, §3230, and the citations thereunder, show that an affidavit by an agent or attorney, or by the complainants themselves, that the allegations are true to the best of affiant's knowledge and belief, as in this case, is insufficient. The very condition in this section is taken from the cases cited thereunder.

Judgment affirmed.