ALVAH HUNT, Trustee, etc., Appellant, v. JOHN BULLOCK *et al.,* Appellees.

APPEAL FROM ST. CLAIR.

Fuel, office furniture, material for lights, and all other detached property of that kind, not like road equipments, designed for the continued use of the road, is personalty, and corporations, as well as individuals, can only mortgage such property by conforming strictly to the statute in reference to chattel mortgages, and for the same time.

Subsequently acquired property is not held by a chattel mortgage.

THIS was a bill in chancery filed in the St. Clair Circuit Court, by the appellant, as trustee of the bondholders of the Terre Haute, Alton and St. Louis Railroad Company, to restrain the appellees from selling on execution certain fuel and office furniture belonging to the said railroad company, which had been levied on by the sheriff of said county, to satisfy certain judgments in favor of the appellees, on the ground that the property in question was held by the appellant as trustee, under the mortgages given by said railroad company, to secure the payment of their bonds.

A demurrer to the bill was sustained by the court below, and appeal taken.

The case was tried before SNYDER, Judge.

G. KOERNER, for Appellant.

UNDERWOODS, for Appellees.

Hunt *v.* Bullock et al.

WALKER, J. We shall first examine whether fuel and office furniture, when owned by a railroad company, is real estate, and the company thereby, not required, in executing a mortgage on such articles, to comply with the chattel mortgage law. It is too plain a principle to require argument or reference to authorities, that there is a marked difference between real and personal estate. All commentators and judicial determinations on the subject, have held that real estate embraces such things as are permanent, fixed and immovable, and which cannot be carried out of their places, as lands and tenements. While personal property is defined to be goods, money, and all other movables which may attend the person of the owner, wherever he may think proper to go. While, however, these broad and well-defined distinctions are universally acquiesced in and enforced, both in this country and in Great Britain, as being elementary, and lying at the very foundation of our system of jurisprudence, there have been and are still, some exceptions, such as trade fixtures and emblements on the one hand, and heir looms on the other.

· This property, as all must perceive, is not permanent, fixed and immovable, but is detached and separate from the road and its lands. It may be with convenience removed from place to place, and does not in the very nature of things bear the slightest resemblance to real property. It on the contrary, has every element of personalty, and cannot be considered anything else, under any known rule of law. It has not been held, nor was it urged, that such property falls within the exceptions governing trade fixtures or implements, nor can it be so regarded. They, in their nature and use, resemble real estate or real fixtures no more than do the money, books and stationery of the company. As between individuals, such property has never been regarded as real estate or fixtures, but has, in all conditions and under all circumstances, and for every purpose, been regarded as, what it simply is, personal property. These distinctions are so plain and familiar, that every class of men, in their business affairs, act upon and conform to them. If, as between individuals, a court were to announce a contrary rule, it would startle every class of men as new and unheard of in our system of jurisprudence.

Our legislature has failed to declare such property, when owned by incorporated bodies, to be real estate, nor does any rule of the common law make such a distinction in its favor. The common law, as it heretofore existed and now exists, with all of its expansive nature, and its adaptation to new and varying circumstances of a community, has always been applied to bodies politic and corporate, as it is to individuals. All their

21

exemptions from its operation, are found in their charters, or in the general statutes of the State. The charter of this company grants no such immunity from its operation, and no general law of the State has given such bodies the right to hold personal property as real estate. Nor has it ever been held that because personal property is convenient, or even necessary to the enjoyment of real estate, that it should for that reason, he held and treated as such. Were such a rule adopted, it would convert almost every description of chattels into realty. The teams, implements, money and stock of the agriculturist, the capital and stock of the mechanic, the miner, the manufacturer, the merchant, and every man's household furniture and property, would fall fully within the reason of such a rule. Such has never been claimed for individuals, and no reason is perceived in justice, or upon principle, why corporate bodies have any higher or greater claims to such exemptions. They are unquestionably, outside of their charter privileges, entitled to the benefits of the rules of law, as are individuals, but to nothing more.

It is only since railroad mortgages have came to be discussed, that any attempt has been made to treat what are undeniably and palpably personal chattels as anything else, and even then, when ingenuity had exhausted itself, in endeavors to show, that fuel and office furniture and the like, were real estate, or in equity should be treated as such, for the benefit of mortgagees, the result has proved a signal failure. In the absence of any common law rule, or statutory enactment making these articles real estate, we must hold, whether they be owned by a railroad company, or an individual, that they are personal property, and as such, are subject to all of its incidents. To hold otherwise would be to violate elementary principles, recognized and acted upon wherever the common law obtains.

When it became apparent that the exception was untenable, that it was real estate, then refuge was sought under the broad mantle franchise, and wood, coal, writing desks, stationery, and all kinds of household furniture, which could not be called real estate, and must not be called chattels, and subject to the rules of law governing such property, were called franchise. What then is this franchise which it is claimed may transmute personal into real estate, and change the very nature and use of things in such a manner? It is only an immunity, privilege or exemption, from the ordinary burthens and restrictions to which the citizens of the State or government are generally subject, and is usually granted to bodies corporate or politic, for public convenience. This privilege, or the franchise when granted to such bodies, is found alone in their charters, or the law which brings them into existence. In all other things outside, and in-

dependent of their charter privileges, they have always been held amenable to, and are governed by the general laws of the State, to the same extent and in the same manner as individuals. The courts are powerless to extend their privileges, beyond the grant contained in their charter, either in express terms, or from necessary implication, to effectuate the objects of their creation. These are their vested rights, and we are determined that so far as this court has the power, they shall always be protected in their enjoyment, but in protecting their righs we must not override other equally sacred and important rights, belonging to individuals.

If furniture, fuel and other articles of personal property, may be regarded as franchise, simply because it is convenient to enable railroad companies to exercise their privileges, and we are, for that reason, to infer that the legislature intended to exempt such property from sale, it must follow that the same rule of interpretation, and for precisely the same reason, must exempt such property from sale, when owned by a bank or other monied corporation. If such a rule were adopted in favor of these bodies, it must be obvious that they would be at once placed above and beyond all legal control, enabling them to retain all of their property in despite of their creditors. They might thus avoid paying their taxes, and refuse to perform every duty imposed by their charter. If applied to banks, they could refuse to redeem their bills, and hold the very property purchased with them, in defiance of a judgment and execution. So of insurance, manufacturing and other corporate bodies. If such a rule were applied to railroads, they might, with perfect impunity, violate every duty imposed by law, as well as every obligation assumed by them. They might appropriate property entrusted to their custody, commit the grossest wrongs, and wantonly destroy property, and inflict injury upon individuals from mere wantonness or malice, and, nevertheless, hold their property exempt from sale to satisfy the damages recovered for such wrongs. How prevent them from committing trespass upon the person or property of individuals, or enforce the penalty given by the statute for inflicting death upon persons? By what process, it may be asked, could their employees enforce the payment of the pittance they have earned by their toil, while advancing the interest of the companies in promoting their accumulations? The legislature could never have intended such results when their franchises were granted, and until it is required by enactment, we cannot give their charters such a construction.

It is likewise urged, that railroad companies, in executing mortgages or deeds of trust on chattels, are not required to conform to the chapter regulating chattel mortgages, and for

that reason, it is insisted that the decree in this case should be reversed. The deeds of trust, in this case, were executed by the company to secure the loan of several sums of money, for which they had executed their bonds, but the company failed to acknowledge these instruments before a justice of the peace, in the justice's district in which they had their principal office or place of business, nor was any memorandum of the same, with a list of the articles of property embraced in the deeds, entered upon his docket, as required by that act. This the statute expressly requires to render such instruments valid, and the 29th sec. of chap. 90, R. S., has expressly provided, that incorporated companies shall be embraced in the general enactments of the State. And this provision has been held to apply to railroad companies created after the adoption of the revision of 1845, and is manifestly in accordance with the legislative intention. *Mineral Point Railroad Co.* v. *Keep*, 22 Ill. R. 9. These deeds not having been executed and acknowledged, and no memorandum or list of the articles pledged having been made, according to the requirements of the statute, there was such a failure to comply with the law, as would render such instruments, if executed by an individual, void as to third persons, (*Davis* v. *Ransom*, 18 Ill. R. 396,) and such must be the effect in this case.

The statute likewise prohibits the mortgagor from retaining the possession of chattels thus mortgaged, for a period of more than two years from the time when it was executed, acknowledged and recorded, and then only where the deed expressly makes such a provision. In this case, the deeds provide, that the company may retain the property for a much longer period, and the possession had remained with them more than two years after the deeds were recorded, and before the levies were made, under the executions in favor of the defendants in error. This is in direct violation of the statute, and has been frequently held to render such instruments void as to third persons, and even had these instruments been regular in other respects, this would be sufficient to render them fraudulent as to these creditors.

These deeds likewise contain a provision, that future acquired property of the company, as well as that owned at the time, should be subject to all of their provisions. It was not, nor can it be claimed, that at law any lien can be created, by this mode of sale or pledge, on property at the time having no existence, or not owned by the vendor or mortgagor. By its rules, all such efforts at a sale or mortgage are regarded as nothing more than a mere executory agreement for a sale, and for its breach, gives compensation in damages, as for the non-perform-

ance of any other executory contract. But, on the contrary, if such a mortgage is so far executed, that the after acquired property has passed into the hands of the mortgagee, under the original mortgage, it has been held to create an equitable lien which a court of chancery will recognize and enforce, unless prior liens have attached. Until possession is acquired by the mortgagee, the court will not afford relief, but will leave the party to his remedy at law, which is adequate and complete. If it was otherwise, it would be to decree a specific performance of an agreement for the sale of personal chattels, which the court will rarely do, as a matter of original jurisdiction. That cases may be found which hold that such agreements create an equitable lien on future acquired or created property, without reference to its having been reduced to possession, is no doubt true, but seem to be opposed to the weight of authority, and in violation of the rules of equity jurisprudence.

But were it admitted that they fully accord with the principles of equity, the rule could not prevail in opposition to express statutory enactments, which declare such instruments inoperative and void. We have seen that the statute requires, as a condition to the validity of a chattel mortgage, or deed of trust, when the property is permitted to remain with the mortgagor or grantor, that a memorandum of the instrument, with a list of the property, shall be entered upon the proper justice's docket, and the instrument must provide for the property to so remain, in the possession of the mortgagor, for a period of not more than two years, together with a compliance with the other requirements of the act. This court, in the case of *Davis* v. *Ransom*, 18 Ill. R. 396, held an instrument similar to these, to be void as to creditors and purchasers, as being in contravention of the policy of the statutes, because there could be no list of property entered by the justice, where it had no existence, and that it was only an attempt to enable the parties to continue their business, in defiance of their creditors. If railroad incorporations are permitted to execute such instruments, they will be enabled, in defiance of their creditors, to retain all the property that they may acquire, and to any extent. And upon what principle may it be done ? Will any one deny that, if the company had sold this property, that the purchaser would have acquired a perfect title as against the trustee ? Could they not have sold this very property, in defiance of the mortgagee, for the payment of these judgments ? Then by what known rule of law can it be, that the mortgagor could still hold it beyond the reach of the law, for the payment of these debts, and the next moment turn round and sell it for cash, and put it in their treasury, to be spent as they might choose, or turn it out to any other creditor ?

If this be so, it is an anomaly in the jurisprudence of this, or any other country. It is a new invention, born of some new emergency. The law prohibits individuals from making such a mortgage as this, and declares them fraudulent, and no one would pretend, as between individuals, that it could protect property thus situated. This we have often decided. This no one has ever doubted. And it would seem that every known principle of law, and of natural justice, requires that the same rule should be applied to incorporations. This property consumed by the road, in carrying on their business, could not remain in their possession, in the sense contemplated by the statute, and it was the obvious design of the parties that it should not so remain. From the great length of time these mortgages had to run before their maturity, it is hardly reasonable to suppose that property of this description, applied to its ordinary and appropriate use, could remain in existence, or that, at that time, any portion was expected to be in existence to answer to the payment of these debts. To permit the company to sell, or use in its consumption, such mortgaged property, and to substitute other articles in its stead, would enable them to acquire credit on the faith of such property, and when the attempt is made to subject it to the payment of the debt thus created, they could hold such subsequently acquired property as covered by the lien of the mortgage. In the case of *Rheims* v. *Phelps*, 3 Gilm. 455, this court holds, that parties have no power to substitute other property for that which was covered by the mortgage. To permit it, would operate as a virtual repeal of the law regulating chattel mortgages, and produce the very evils it was designed to suppress. To hold then, that the principles of equity jurisprudence will uphold such instruments, is to decide that what has been prohibited by statute, and what has been held by courts of law to constitute a fraud, is in equity legal, and has claims upon the chancellor to enforce it as equitable and just. Whatever may have been held in other States, in the absence of such a statute as ours, or such decisions as have been made in our courts of law, in this State, we feel wholly unauthorized to override the statutes and former decisions by assuming jurisdiction, and giving these instruments validity.

It may be urged, that public policy requires, that we should, in despite of the statute, give effect to these instruments, and hold that such bodies are not to be required to comply with this or other statutes. Or that their property must be treated as franchise, and therefore exempt from execution in discharge of their debts. It is no doubt right and proper, that the legislature should afford all reasonable immunity to this large and important class of interests, and that courts should fairly apply

Hunt *v.* Bullock et al.

the law, so as to deprive them of none of their rights, but sound policy, can never require courts to warp the law, to protect one class of individuals at the expense of another. Public policy requires courts to declare the law as it is. They cannot wrest the law from what it now is in reference to similar contracts relating to any other subject matter. These bodies are not the only ones, whose rights the courts are bound to protect. The bondholders are the creditors of the road, and so are the plaintiffs in these judgments. They in this respect occupy the same attitude as do other creditors of such bodies. They are not creditors of the State, and its faith is only pledged for their protection, to the same extent that it is to all creditors of individuals, or of other corporate bodies. And that such creditors will at all times, meet the same protection in the enforcement of their rights, as do. other creditors at the hands of the legislature and of the courts, there can be no room to doubt. When the ˙legislature authorized these roads to borrow money, that body did not indicate any intention that the courts should make any exception in favor of their claims over those of others. Banks are created for the public good, and so it may be said of other municipal and monied corporations ; and yet it has never been urged that creditors who have loaned such bodies money, have any right to insist upon superior preferences to other creditors of such institutions. It never has been urged that public policy required that their property should be exempt from involuntary sale for the payment of their debts. These bodies can contract debts alone by legislative authority, and until that body shall declare what exemptions they are to enjoy, courts are powerless, even if they were desirous, to afford relief against the operation of the law. The plain and simple duty of the courts, is to administer the law as it is. And this is the broad shield that protects the weak against the powerful, and the poor against the affluent. We may lament the loss of those who have been unfortunately mistaken or inattentive to the legal rights of such bodies, and have sustained loss by a non-observance of the requirements of the law, but we must declare the law as we find it.

That these incorporations, when they mortgage their road, tracks and franchises, thereby mortgage all of the permanent fixtures, such as the road equipments for their continued use and connected with them, we have no doubt. And by such a mortgage, all future additions to it, of the same permanent nature, being an incident to the real estate, must become subject to the mortgage, as do improvements to other real estate mortgaged by individuals. So of repairs to personal property of the road legally mortgaged, and not designed for daily con-

sumption. But that fuel, office furniture, stationery, materials for lights, and all other detached property of that character is personalty, we have no hesitation in determining. See *Palmer* v. *Forbes, ante*, p. 301. To hold otherwise would, it seems to us, involve us in an absurdity, if followed to its inevitable consequences, that we are not prepared to adopt, for the purpose of relieving against what might appear to be a hardship in a particular case. Whenever the law is warped for such a purpose, it must terminate in absurdity, and lead to the perpetration of great injustice.

The decree of the court below in sustaining the demurrer to, and the dismissal of complainant's bill is affirmed.

*Decree affirmed.*