Titus et al., Trustees, etc., v. Mabee et al.

---

GEORGE N. TITUS *et al.*, Trustees, etc., Appellants, *v.* JAMES MABEE *et al.*, Appellees.

APPEAL FROM ALTON CITY COURT.

The motion to dissolve a temporary injunction operates precisely as a demurrer, and by it the defendants admit the truth of all the allegations relied on by the complainants to entitle them to an injunction.

A decree dissolving a temporary injunction is final when no other relief is sought by the bill, and may be reviewed by this court.

An iron safe and a planing mill which is not attached to the freehold, are personal property, and liable to be taken on execution against a railroad company owning them.

But a freight car on the road, side-tracks, or turn-tables of the company is realty, and like timber, fruit trees and buildings, only becomes personal property when detached from the realty by the owner. The plaintiff or officer cannot dissever it, and thus change its character.

Pleadings are construed most strongly against the pleader.

A chattel mortgage, or deed of trust of chattels, does not create a lien on personal property acquired after its execution.

THIS was a bill in chancery, filed by complainants against defendants, for an injunction to restrain them from interfering or meddling with certain property levied upon by defendant Brown, as sheriff, by virtue of two executions in favor of the other defendants severally, and prays for relief, and that the injunction be made perpetual.

The bill gives a detailed history of the organization and building, and financial affairs, and changes in what is now known as the Chicago, Alton and St. Louis Railroad Company, until December 15, 1856, when Joel A. Matteson and Elisha C. Litchfield became the purchasers from Fullerton, Brown & Keating, as trustees for certain bondholders.

17

25 257
36a 257
37a 70
25 257
39a 257
25 257
143 241
25 257
46a 322
47a 169
25 257
54a 649
58a 77
25 257
69a 537
25 257
181 190
25 257
188 ² 27
25 257
100a ⁶ 21
25 257
200 ⁴ 46
25 257
202 ²366
25 257
107a ²289
25 257
208 ² 59
25 257
213 ² 60

Titus et al., Trustees, etc., *v.* Mabee et .al

The bill further alleges, that said Matteson and Litchfield and their associates became an incorporated company by virtue of a legislative enactment of the State of Illinois, under the title of the St. Louis, Alton and Chicago Railroad Company. That after said organization, the company resolved to issue $2,500,000 " convertible" bonds, and to be secured by a mortgage to the complainants as trustees for the holders of said convertible bonds, of all of the property of said road, subject, however, to the lien of three classes of bonds before given.

Mortgage executed April 6, 1857.

This mortgage contains a condition that if the interest on the bonds secured by it is not paid within thirty days after being lawfully demanded, then the whole principal and interest to become due.

The bill further alleges, that $300,000 of bonds have been issued under this mortgage and delivered to various persons and corporations, who now hold the same; that the interest is due on the same since July, 1858; that many judgments have been obtained against the railroad company; that a sale of any of the property of the road would be ruinous to the interest of all or a large majority of the bondholders and creditors of said road; that all the property should remain intact and undisturbed for the benefit of the bondholders and creditors; that said company have no means of paying its indebtedness other than the income of the road; that all of the property now in possession of the road was in its possession at the time of the execution of mortgage to complainants, or was acquired afterwards, to be paid for out of the earnings of the road.

The bill further alleges, that at the October term James Mabee recovered a judgment against the railroad company for $251.55, dues and costs; that Samuel Pitts, the other defendant, at same term obtained judgment for $332.11, dues and costs; that by virtue of executions on said judgments, the deputy sheriff of Brown, the other defendant, had levied upon a freight car, an iron safe, and an iron planing machine; that said property was advertised by sheriff to be sold on the 13th June, 1859;—complainants allege that the property levied upon is absolutely necessary for the transaction of the business of the railroad; that the articles mentioned are in the actual use or intended immediate use of the road; that the property was included in the mortgage to complainants, and has been or is to be paid for by the earnings of said road. The bill prays for relief, and injunction.

The injunction was granted by the master in chancery of the Alton City Court.

The only ground relied upon by the defendant's counsel for

dissolving the injunction, was that the master of the Alton City Court had no authority to grant writs of injunction.

The court dissolved the injunction, and the complainants appeal from that decision.

STUART & EDWARDS, for Appellants.

LEVI DAVIS, for Appellee.

WALKER, J. This was a bill filed, by the trustees of the bondholders of the St. Louis, Alton and Chicago Railroad, against Mabee, Pitts and Brown,—the first two, judgment creditors of the road, and the last the sheriff of Madison county. The object of the bill was to enjoin the sheriff from selling a freight car, an iron safe and an iron planing machine, to satisfy executions which had been issued upon their judgments. On the sixth day of April, 1857, the railroad, with its lands, track, furniture, equipments and personal property, was conveyed to complainants in trust, to secure bondholders of the road in their debts and accruing interest. The bill alleges that the property levied upon, under the executions, is the same that was held by the road, and embraced in the deed of trust, or has been subsequently acquired, and is essential to the prosperity of the road. The court below dissolved the injunction, from which decision the complainants appeal to this court.

It is first urged that the decree of the court below is not final, and is therefore not the subject of review in this court. The only relief sought by the bill, was to enjoin the sale of the property under the executions, and when defendants entered their motion to dissolve the temporary injunction, it was for the want of equity appearing on the face of the bill. The motion operated precisely as a demurrer, and by it the defendant admitted the truth of all the allegations relied upon to entitle the complainants to an injunction. The practice is to allow either a demurrer to the bill, or a motion to dissolve the injunction, and either course produces precisely the same result, so far as the injunction is concerned. On sustaining the demurrer, or allowing the motion, the temporary injunction is in either case dissolved, and if no other relief is sought, the case is virtually at an end. If the bill were retained, and full proof of all the allegations which it contained was made, the result would not be changed. It would only be to prove what is admitted by the demurrer or the motion. If other relief were sought by the bill, the decree dissolving the injunction could not, however, be regarded as final. But as no other relief was sought in this case, we are of the opinion that without reference to what has

become of the bill, the decree of the court is final, and this court has jurisdiction to review that decision.

Having then disposed of this preliminary question, we come to the consideration whether this property was subject to levy and sale on these executions. In the case of *Hunt* v. *Bullock*, 23 Ill. 320, we held that property acquired by a railroad company, subsequently to the execution of a chattel mortgage or deed of trust, could not be held subject to its provisions. That chattels must have an existence at the time of the execution of such an instrument, or any attempt to embrace them in its provisions will be fraudulent against creditors and purchasers, unless such mortgaged property after it is acquired, be reduced to the actual possession of the mortgagee, before the rights or liens of others have attached. In that case, as also in the case of *Palmer* v. *Forbes*, 23 Ill. 302, it was held that engines, cars and rolling stock, on the road were real fixtures, and as a portion of the realty, passed with it, and were not governed by the law relating to personal chattels. And that fuel, office furniture, stationery, materials for lights, and detached property of that description was personalty. Then is an iron safe, and an iron planing machine, property of the latter description? Neither of these articles can be regarded as a part of the road or its equipments. The former has none of the distinctive features or essential qualities that pertain to real estate, and we are unable to imagine how it could under any circumstances become anything other than what it is, personal property.

An iron planing machine, when not permanently attached to the realty, is personal property, as all must admit. And we know that it may be used as successfully without being thus annexed as when it is. But unless it is so connected with, and attached to the realty, as to indicate that it is designed to be permanent, or its removal would be injurious to the freehold, it must be regarded as personal property, and controlled by its incidents. In this bill there is no allegation that it is permanently attached to the freehold, and as it is personalty until it is thus situated, the presumption is, until rebutted, that it is personal and not real property.

These articles then being personal property, the question is presented whether they are embraced in and subject to the deed of trust. The bill fails to allege that they were in existence when the deed was given. But it is alleged in the alternative that they were either owned by the company at that time, or had been since acquired. According to the rule that pleadings must be construed most strongly against the pleader, when there is a want of certainty in the allegation, it must be held that this was after acquired property, and not protected by or embraced

Titus et al., Trustees, etc., v. Mabee et al.

in the deed of trust, so as to exempt it from sale for the payment of judgments against the company. If it had belonged to the road when the deed was executed, complainants would no doubt have alleged that fact. These articles then, were liable to be sold on these executions, and the court committed no error in dissolving the injunction as to them.

The remaining question presented by the record, is, however, one of more difficulty. The freight car being a portion of the equipment of the road, and if upon the road a part of the realty, can it be sold on execution, and severed so as to change it to personalty? We are not aware that any adjudged case has ever held that improvements or fixtures to real estate may be thus detached, and sold under judicial process, without the consent of the owner. If this may be done, houses, fences, timber, fruit trees, and almost every description of improvement might be converted into personalty, and the right of redemption defeated, and great injury and loss inflicted, by the plaintiff and officer, under the *forms* but contrary to the spirit of the law. If, however, fixtures be detached by the owner of the freehold, and thereby converted into personalty, until again restored, it would doubtless be subject to levy and sale, as any other chattel. And such things until they are permanently annexed to the freehold, are regarded as personal and not real estate.

The statute (Scates' Comp. 604) has provided that property, real or personal, taken in execution, if susceptible of division, shall be sold in such quantities, as may be necessary to satisfy such execution and costs. This enactment only requires the division of the property, and not a change of its nature. When real estate is divided, it contemplates that each portion of the division shall still retain its distinctive character, and not be converted into personalty. No such design can be inferred by the language of the act. It would be doing violence to the rules of interpretation to hold that because the law has required a division where it is practicable, therefore it authorized the sheriff to fell and remove timber, remove fruit trees in an orchard, fences, or the buildings erected on a realty, and thus convert them into chattels. Yet if he might levy and sell any of these things independent of the soil of which they form a part, such would be its effect. All such things after they are annexed, must be regarded as inseparable from the freehold, until severed by the owner.

It was held by this court in the cases of *Palmer* v. *Forbes*, 23 Ill. 302, and *Hunt* v. *Bullock*, ib. 320, that railroad cars connected with and annexed to the road, form a part of its real estate. If this be true, this freight car was realty while on the road or any of its side tracks, turn-tables or premises. It then follows that

if it was thus situated, the sheriff had no legal authority to levy upon and sell it. And as the bill alleges that these articles were either in actual use, or intended for immediate use by the road, and as cars can only be used upon the road and as real estate, the presumption, until rebutted by evidence, is that it was so situated as to render it real and not personal property. If the car was not on their realty, or not in their possession, it would doubtless be personal property, and subject to all of its incidents. The court should therefore have continued this injunction as to the car until a final hearing, and unless the evidence had then shown that it was detached from their real property, it should have been made perpetual, restraining the sheriff from severing and selling it.

The decree of the court below is so modified as to continue the injunction as to the car, and affirmed as to the safe and planing mill, and the cause is remanded.

*Decree modified.*