Calumet Iron & Steel Co. v. Lathrop.

## The Calumet Iron & Steel Company et al.
### v.
## William Lathrop et al.

36 249
47 123
36 249
36 363

*Deeds—Fixtures—Machinery.*

Machinery placed in a factory by the owner of the land, and either actually or constructively attached to the building, which is operated by belt or gearing from the motive power of the plant, and is necessary for the prosecution of the business for which the factory was erected, are fixtures which pass with the realty.

[Opinion filed May 28, 1890.]

In error to the Circuit Court of Winnebago County; the Hon. O. H. Horton, Judge, presiding.

The N. C. Thompson Manufacturing Company, one of the defendants in error, was a corporation duly organized under the laws of this State, engaged in business at Rockford, Illinois, in the manufacture and sale of a general line of agricultural implements.

Its manufacturing property was located upon what is called the Rockford Water Power, and consisted of several lots upon which were erected several large stone shops and other structures used in the business, the principal buildings being connected by bridge or passage way from one to the other.

The motive power driving the machinery of the plant was, in the main, water, but to guard against want of sufficient power in low water, large steam boilers and powerful engines, fully equipped for use, had been placed in the buildings upon the premises and connected by means of wheels, belts and other gearing, with the main shafting through the buildings, for use when needful in driving the machinery, as well as to heat by steam through pipes, the factory buildings.

In conducting its business, which was quite extensive, it had placed and had in necessary use in the buildings above men-

tioned, many machines, much machinery and many implements useful and necessary for carrying on the business in which it was then engaged, which machines and machinery were either fastened to the buildings or were of weight sufficient to sustain the same in position without fastenings. Each machine being run by independent belt or gear from the main shaft. The entire machinery in controversy in this suit was all connected with the water and steam power of the manufactory, and propelled either by belt or gearing thereby.

The N. C. Thompson Manufacturing Company, on or about the 15th day of January, A. D. 1885, pursuant to a resolution of its board of directors, issued 100 bonds of the said company for the sum of $1,000 each, concerning which no question is made in this case, of which bonds so issued, Singer, Nimick & Company (limited) held and owned forty-nine, thirty-five were held and owned by Whitman & Barnes Manufacturing Company, and sixteen by the Smith Bros. & Company.

To secure the payment of these bonds the Thompson Manufacturing Company executed and delivered its mortgage trust deed to one William Lathrop, as trustee of its manufacturing plant, property and effects, bearing date on the 15th of January, 1885. This deed was executed and delivered in pursuance of a resolution of its board of directors in due form, and was duly filed for record in the recorder's office of Winnebago county on the 16th of January, 1865, and duly recorded.

That mortgage trust deed contained this provision (following the description of the lands and water power): " And this conveyance does and shall include and embrace all the buildings and improvements erected and being upon the aforesaid lands, or any part thereof, and the buildings and improvements over the aforesaid race between the lots as above mentioned, and also does and shall include and embrace all the fixed and movable machinery in and about the buildings and every of them upon the aforesaid lots, and the tools and implements used and adapted to use in and upon said premises, in the prosecution of the manufacturing business

of said party of the first part.   Hereby conveying and intending to convey to said party of the second part the manufacturing property, including machinery, tools and implements of said party of the first part, situate and being in said city of Rockford, and also including all such new or additional machinery and tools as the party of the first part may, from time to time, place in or upon its said manufacturing property."

On or about the 25th of December, 1886, the N. C. Thompson Manufacturing Company, being insolvent, executed and delivered to Samuel P. Crawford, as assignee, a general deed of assignment of all its property and assets for the benefit of its creditors, which deed of assignment was executed and delivered pursuant to the resolution of the board of directors of the company, and immediately upon the making of the assignment, the assignee, Crawford, took possession of all the property and effects so assigned and has so continued in the possession thereof, in the execution of his trust.

On the 18th of March, 1887, the plaintiff in error (the Calumet Iron and Steel Company) recovered two judgments in the County Court of Winnebago County, against the N. C. Thompson Manufacturing Company, aggregating about $1,494, and at or about the same time the other plaintiffs in error, the De Golyer Bros., recovered two judgments in the said County Court against the N. C. Thompson Manufacturing Company, aggregating about $1,776, which said judgments were by the Calumet Iron and Steel Company and the De Golyer Bros., presented to the said assignee, Crawford, as claims against the estate of N. C. Thompson Manufacturing Company, and these claims, after due proof thereof, were reported to and allowed by the County Court against the bankrupt estate, upon the application of the claimants.

On the 4th of April, 1887, the original bill in this suit was filed in the Circuit Court of Winnebago County, to foreclose the mortgage executed as before stated to William Lathrop, trustee, the bonds thereby secured, with interest thereon, having become due by the terms of the said mortgage, and then remaining unpaid.

To this original bill the De Golyer Bros., the Calumet Iron and Steel Works, as judgment creditors of the mortgagor company, and S. P. Crawford, as assignee of said company, were made defendants. By an amendment to the original bill by leave of court made, it was stated and charged that the machinery and tools referred to, and mentioned in the said mortgage deed, were in the buildings of the said N. C. Thompson Manufacturing Company at the time the mortgage deed was executed; that the same had been incorporated into and made part of the mortgaged premises; that the same were fitted for, and adapted to use in the business carried on and conducted in that industry, and remained in and were attached to the buildings and land in the mortgage deed described; that such machinery would be of little value, if removed, and the value of the mortgaged premises would be greatly lessened by removal, etc; to which amendment was attached a list of the machinery and tools then in and upon the said mortgaged premises.

To this bill the plaintiffs in error, as such judgment creditors, filed their answer, and also a cross-bill against the complainants in the foreclosure proceeding, and the assignee, claiming, in effect, that the manufacturing machinery in and upon the said mortgaged buildings and premises was personal property, and was not covered by the mortgage in the foreclosure proceeding, as against them as such judgment creditors, and that the assignment was void as to them, etc., and claimed the right to have satisfaction of their said judgments by a levy upon such machinery and sale thereof, under the executions issued upon their judgments, etc. Answers were filed to the original bill and the cross-bill and replication thereto.

It was agreed in the trial court between the parties, " that the machinery mentioned in the schedule of the assignee, marked ' machinery,' and mentioned in the amendment to the original bill, was the same machinery in use by the N. C. Thompson Manufacturing Company in its factories on the mortgaged premises at the date of the mortgage herein sought to be foreclosed; that said machinery was placed in the factories, mort-

gaged by the then owners of the property, and was adapted to use in the business then being prosecuted by said mortgagor corporation, at the date of the said mortgage, and was necessary for the convenient prosecution of such business, and that the said machinery at the time of such hearing remained in the said mortgaged factory buildings."

A reference was had to the master in chancery to report proofs and findings, who reported the evidence taken, and found " that the machinery in the factory mentioned in the amended bill was conveyed by the terms of the mortgage deed, and are now subject to the lien thereof," etc., to which findings plaintiffs in error excepted, the exceptions were overruled, and exceptions were taken to such ruling.

The court below on hearing decreed the foreclosure of the mortgage on the original bill as prayed, and the sale of the premises therein described with the machinery in said mortgage stated and described, to be sold to satisfy the said decree in case of non-payment, etc., and denied to plaintiffs in error the relief sought for and prayed in their cross-bill and dismissed the same.

To reverse which decree in refusing the relief sought by the cross-bill and dismissing the same, and in overruling the exceptions to the master's report of facts and findings, this writ of error is prosecuted.

Mr. D. M. KIRTON, for plaintiffs in error.

Messrs. ALFRED TAGGART and W. & E. P. LATHROP, for defendants in error.

UPTON, P. J.    This was a bill in equity commenced in the Circuit Court of Winnebago County by the defendants in error as mortgagees and bondholders of the N. C. Thompson Manufacturing Company, a corporation duly organized under the law of this State, to foreclose a trust deed executed by that company to William Lathrop as trustee, dated January 15, 1885, and duly recorded, given to secure the payment of $100,000 and interest at six per cent, which amount was evidenced by one hundred bonds of that company of

$1,000 each, which were held and owned at the commencement of this suit and rendition of the decree therein by Singer, Nimick & Company (limited), Whitman & Barnes Manufacturing Company, and Smith Bros. & Company, who, with William Lathrop, trustee, were complainants in the original bill for foreclosure. The bonds having prior thereto become due and payable by the terms of the deed of trust.

The deed of trust especially provided that the lien thereof should extend to, include and embrace all the fixed and movable machinery in and about the buildings in the trust deed described, standing upon the lots therein designated, together with the tools and implements used and adapted to use in and upon the premises in said deed designated, in the prosecution of the manufacturing business of the N. C. Thompson Manufacturing Company, as is above fully set forth and stated.

The plaintiffs in error were judgment creditors of the N. C. Thompson Manufacturing Company. Their several judgments were obtained subsequent to the execution, delivery and record of the deed of trust sought to be foreclosed, viz., on March 14, 1887. As such judgment creditors, they were made parties defendant to complainant's bill for foreclosure; answered the same, and filed their cross-bill thereto, by which they sought to establish that the machinery was personal property, and subject to execution on their judgments; complainants answered the cross-bill and upon replications being filed, the cause was referred to the master to report proofs and findings, etc. The master, after hearing, made and filed his report, in which he found for the complainants in the original bill, that the machinery mentioned therein was in use in the factory of the mortgagor company at the date of the deed of trust, placed therein by the owner thereof, adapted to use in the business then being prosecuted by the mortgagor company, and was necessary for the convenient prosecution of its business; that the same then remained in such factory buildings, and that such machinery was conveyed by the terms of the deed of trust, and was subject to the lien thereof, and that complainants in original bill were

entitled to a decree foreclosing the said trust deed mortgage for the payment of the bonds secured thereby. Exceptions were filed to the master's report, which, being overruled, a decree was entered for the complainants in the original bill foreclosing the said mortgage deed of trust for the amount due them, and dismissing the cross-bill of plaintiffs in error, and denying the relief thereby sought.

The record before us presents two questions:

1st.   Whether the machinery in controversy, under the facts, was so actually or constructively annexed or attached to the realty as to pass by the conveyance or mortgage of the land upon which it was situated, where the intent of the parties to such deed or mortgage to so treat it is manifest.

2d.   Whether the deed of assignment to S. P. Crawford by the N. C. Thompson Manufacturing Company was effective or void.

First.   That the machinery in question was placed in the buildings upon its plant by the Thompson Manufacturing Company, its owners, prior to the execution of the mortgage, and was, in fact, the operative machinery in the business of the mortgagors, and was all, either actually or constructively, attached or annexed to the factory buildings of the plant and was operated or propelled by belt or gear from the motive power of that plant, and was adapted to and necessary for the successful and proper prosecution of its business, we think, will not be controverted in this case.   The rule determining what are to be regarded as fixtures, so often stated and sought to be applied is:

" 1st.   Real or constructive annexation of the thing in question to the realty."

" 2d.   Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected."

" 3d.   The intention of the party making the annexation to make it a permanent accession to the freehold.   This intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made."   Ewell on Fixtures, pages 21 and 22.

This author adds:

" Of these tests the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others seem to derive their chief value as evidence of such intention." Chapman v. U. M. L. Ins. Co., 4 Ill. App. 29. The intent of the owners to make this machinery a permanent accession to the freehold, as a question of fact seems both from the evidence and stipulation of the parties to be fully established.

It is in the power of the owner of the inheritance to affix any article of property to it he pleases, and where he does so it becomes a fixture in the general sense of that term and part of the freehold, and if the inheritance be afterward sold or mortgaged or rented, the fixtures go with the freehold. * * * And it makes no difference to what purposes the realty is applied or used, whether for trade, manufactures or agriculture. As between landlord and tenant it might be different. Annexations, when made by the owner, must be presumed to be made with the design of their permanent enjoyment in connection with the realty and as accessory to it. Arnold v. Crowder, 81 Ill. 56; Smith v. Moore, 26 Ill. 392; Chapman v. U. M. L. Ins. Co., 4 Ill. App. 29, *supra*, and cases therein cited.

The general rule undoubtedly is, that all fixtures, whether actually or constructively annexed to the realty, pass by a conveyance or mortgage of the freehold, where there is nothing to indicate a contrary intention. Nor is it necessary, in all cases, that things should be actually affixed to the freehold in order to constitute a part of it, for the purpose of transfer or sale, as in the case of millstones which are constantly being taken up and sharpened. When up they are as much a part of the mill as when in their beds, and yet would pass by deed or mortgage of the mill even if they had been detached for months. So in various kinds of machinery, such as a screw or cutting engine or lathe, when a great multitude of different size pinions or cutters are kept on hand or used, only one of which could be used at a time. All are nec-

essary to complete the machine, and would pass by a sale of the factory, as being a part of it; so the sale of a foundry, as such, would convey the flasks and molds within it. So the machinery for hoisting coal, such as steam engine, machinery and fixtures, including boxes and all other necessary appliances connected therewith, are regarded as realty. Ewell on Fixtures, pages 275, 290, 307, 312; Palmer v. Forbes, 23 Ill. 237; Dobschuetz v. Holliday, 82 Ill. 371; Hunt v. Bullock, 23 Ill. 320; Titus et al. v. Mabee, 25 Ill. 257; Jones on Mortgages, Sec. 446; Jenny v. Jackson, 6 Ill. App. 32; Thielman et al. v. Carr et al., 75 Ill. 392; Arnold v. Crowder, 81 Ill. 56; Wood v. Whelen, 93 Ill. 155; McLaughlin v. Johnson, 46 Ill. 163; Chapman v. U. M. L. Ins. Co., 4 Ill. App. *supra;* Otis v. May, decided at May term, Appellate Court, 2d division, 1889, affirmed by the Supreme Court, October term, 1889, filed at Ottawa.

The Massachusetts rule is in full accord with the cases determined in this State cited above.

It was held in Winslow et al. v. Merchants Ins. Co., 4 Met. (Mass.) 306, which was a mortgage of a machine shop and the contest was between mortgagees, the point was what of the machinery the first mortgagee took under his mortgage, which made no mention of machinery, and in point of fact the machinery was nearly all placed in the mortgaged building after the making of the first mortgage. Chief Justice Shaw says: "The court are of the opinion that the steam engine and boilers and all the engines and frames adapted to be moved and used by the steam engine, by means of connecting wheels, bands or other gearing, as between mortgagor and mortgagee, are fixtures, or in the nature of fixtures, and constitute a part of the realty; and that as all these fixtures were annexed to and made a part of the realty by the mortgagor, they are a part of the mortgaged premises, and passed by this first mortgage to the defendants."

In Pierce et al. v. George, 108 Mass. 78, where the owners of a factory for the manufacture of heels, toe plates, etc., also owned certain machinery in their factory used in their business, and on the 15th of March, 1867, when but a small portion of the machinery of the factory had been put in place,

the owner of the property executed a chattel mortgage on
the machinery, which was duly recorded about one month
thereafter, and after all machinery had been placed in the fac-
tory the owners made a real estate mortgage upon the factory
and land upon which it stood, the contention was as to the rights
of the mortgagees under the chattel and real mortgages.    The
machinery was held to belong to the real estate mortgage.    In
determining that case the court say : " Articles placed in a mill
by the owner to carry out the obvious purpose for which it
was erected, and adapted to that purpose, are generally part
of the realty, notwithstanding the fact that they could be
removed and used elsewhere."    " In a building erected as a
factory, the steam works relied upon to furnish the motive
power and the works to be driven by it, are essential parts of
the factory adapted to be used in it, and with it, and would
pass with it by a conveyance of the real estate."

The same doctrine is held in Maine.    Parsons v. Copeland,
38 Maine R. 537; Farras v. Stackpole, 6 Greenleaf, 154; Frall
v. Fuller, 28 Maine, 545; Corlis v. McNaign, 29 Maine, 115.

In Iowa the same rule is adhered to in Ottumwa Woolen
Mill Co. v. Hawley et al., 44 Iowa, page 57, which was a
trust deed in the nature of a mortgage upon a lot in the
city of Ottumwa, upon which was situate a woolen manu-
factory.    The trust deed described the lot "*with all the ten-
ements, hereditaments and appurtenances thereto belonging.*"
The factory contained machinery for manufacturing wool into
cloth, its motive power a steam engine.    It was conceded that
the engine, boiler, whistle, pump, and attachments and belts
connecting directly with the other machinery were real
estate, but the question presented was whether the "wool
carders, condensers, breakers, spinny jacks, looms, shears,
etc.," were fixtures and passed under the trust deed.    Some
of the machines in the factory were fastened to the floors by
bolts and screws, others kept in place by their own weight.
The machinery in part operated by steam was driven by belts
from the main shaft, or counter-shafting; after a searching
review of the authorities, the court say : " Our conclusion is
that all of the machinery which was propelled by the engine,
was part of the real estate, and passed under the trust deed," etc.

In Wisconsin the same rule is held in Taylor v. Collins, 51 Wis. 123, which was a suit to foreclose a contract for the sale of land where the defaulting purchaser had put up a factory for the manufacture of spring beds. Many of the articles, tools and machinery in the factory were claimed as fixtures, not removable by the defaulting purchaser; among other things that court said: "The operating machinery consisted of a circular saw and frame, a jig saw and frame, with the different saws belonging thereto, a mortise machine, a planer, borer and header, and a turning lathe, secured to the building in the usual manner, run and operated by steam power. It was the intent of the owner in building the shops, putting in steam works and machinery, to make them permanent accessions and annexations to the freehold, and of permanent benefit and addition to the value of the land, and as an improvement of his own property for the purpose of establishing and conducting a manufacturing business. All of the machinery was adapted to the use to which it was put, and actually applied thereto," etc., and it was held that the whole of the machinery and attachments were fixtures.

So in Michigan, in Toyle et al. v. Palmer Trustees, 42 Mich. 314, which was a case where the owners of a woolen mill and the land on which it stood had mortgaged the entire plant and included the machinery. The trial judge and the court sitting *in banc* said that the parties to the mortgage believed the machinery to be personal estate. The mortgage was foreclosed in equity and decree for sale was obtained. Before the sale the mortgagor became bankrupt, and the assignee in bankruptcy claimed the machinery as personal property. The trial court held it to be personal property. Upon appeal the Supreme Court held it was real estate, and passed by the mortgage. That court said: "The circuit judge finds the machinery personalty. This finding was no doubt based upon the fact that the parties so believed and considered it. This may generally be conclusive, but not always, and in this case it is clear the parties were mistaken. The machinery was especially adapted to use in connection with the real estate. It was put up for use

and actually used with it, and was not severed from the realty in ownership. The fact that it was described in the mortgage specially was unimportant."

In Maryland the same rule was followed in Dudley v. Hurst, 67 Maryland, 44; in this case the owner of a large tract of land, used as a farm, had established thereon a factory for canning of fruits, corn, etc. The owner mortgaged the farm, buildings, improvements, appurtenances, etc. About two years after, the farm was sold on the mortgage to Dudley, who took possession and occupied during the year. About one month preceding the sale on the mortgage to Dudley the mortgagor executed a chattel mortgage on the machinery in the canning factory to Hurst. Some months after, Hurst attempted to sell the machinery under the chattel mortgage; Dudley restrained the sale by injunction, and in his bill therefor claimed that the machinery and canning fixtures passed to him as purchaser, under the sale on the real estate mortgage. The court said: "We are therefore of the opinion that the whole machinery of the canning factory passed under the mortgage to (the trustee) Bowie, and consequently to his vendee, under the mortgage sale."

In New York the same rule is held in McRea v. Cent. Nat. Bk. Troy, 66 N. Y. 489, and in Potter v. Cromwell, 40 N. Y. 287, and both cases discredit, if not directly overrule, the case of Murdock v. Gifford, 18 N. Y. 28, at least between mortgagor and mortgagee.

The Supreme Court of the United States held the same rule in Hill v. National Bank, 97 U. S. 450. "That as between mortgagor and mortgagee the lands, buildings, waterpower and necessary machinery of a paper mill were a unit, and should be so treated and regarded in a foreclosure of a mortgage upon the realty."

Such, also, is the English rule, as will be seen in Bowie on Fixtures, pages 114 to 125. This rule, so well established and so firmly supported by reason and the highest judicial authority in this State and elsewhere, we can not disregard, and would not if we could.

We have carefully examined and duly considered the cases

cited by the learned counsel for the plaintiff in error, and we do not think these cases support the view contended for by him.   And while it is true some conflict may, and doubtless does, exist upon the question under consideration, we can not but think such conflict arises more in the application of the rule to the particular circumstances and condition of the cases in which it has been invoked, rather than in the necessity, justice or propriety of the rule itself.

We hold, therefore, that the machinery in question was a part of the real estate and passed to the trustee under the trust deed, and was subject to sale under the foreclosure proceedings, in satisfaction of the indebtedness which it was given to secure.

Second.   We are not called upon, in the view we have taken of this case, to determine the validity of the assignment to S. P. Crawford, and while we are inclined to think it good, yet in this case the mortgage or trust deed being effectual to warrant the decree in the court below, it is not material for us to determine as to the validity of the assignment, and we refrain from so doing.

We have examined the record before us with the care its merits demand, and we can not say that the trial court was not fully justified, both upon the law and the facts, in the decree rendered in this case, and that decree is therefore affirmed.

*Decree affirmed.*