## CHARLES J. OFF

*v.*

## H. V. FINKELSTEIN *et al.*

*Opinion filed June 19, 1902—Rehearing denied December 16, 1902.*

1. JUDICIAL SALES—*fixtures cannot be levied upon and sold as personal property.* Fixtures being attached to and a part of the realty cannot be levied upon by the sheriff as personal property and thus deprive the debtor of the right of redemption granted by statute.

2. PRACTICE—*application to assign additional errors is addressed to discretion of court.* An application to the Appellate Court to assign additional errors is addressed to the discretion of that court, and its action cannot be reviewed unless its discretion has been abused.

*Off v. Finkelstein,* 100 Ill. App. 14, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Tazewell county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding.

ARTHUR KEITHLEY, for appellant.

JOSEPH A. WEIL, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The judgment of the circuit court of Tazewell county, adverse to the appellant in an action of assumpsit instituted by him against the appellees, was affirmed in the Appellate Court for the Second District. The declaration consisted of a special count and the consolidated common counts. The special count counted upon and set forth *in hæc verba* a written agreement signed by the appellant and the appellees. The agreement is as follows:

"Whereas, Charles J. Off, of the city of Peoria, did on the 27th day of September, A. D. 1899, sell and warrant to G. N. Grigsby, of the city of Peoria, for the sum of eighteen hundred ($1800) dollars, certain property particularly described in a bill of sale of that date, a copy

of which is hereto attached and made a part hereof, and which contract of purchase was made by the said Grigsby for and has been assigned by him to one Harry V. Finkelstein, of the city of Peoria, who was and is the owner thereof; and whereas, the Wesley City Coal Company has instituted an injunction suit in the circuit court of Tazewell county, Illinois, to the next February term thereof, against the said Finkelstein and Grigsby, to enjoin them from removing all or any part of said property under claim of ownership thereof, in which suit a temporary injunction has been issued in conformity to the prayer of said bill of complaint:

"Now, therefore, it is hereby agreed that the said Charles J. Off shall employ counsel and at his own expense defend said injunction suit in the name of said Finkelstein and Grigsby, making such defense thereto and to such an extent and in such courts, by appeal or otherwise, as he may desire, and that the said Finkelstein and Grigsby, and each of them, shall sign such papers and appeal bonds as are in the judgment of said Off necessary in the prosecution or defense of said suit, and that the said Off shall also at once return to the said Finkelstein said sum of eighteen hundred ($1800) dollars, which shall be held and used by him until a final disposition of said injunction proceedings, and if said proceedings result in a decree finding that said Wesley City Coal Company was not entitled to maintain its said bill, then the said Finkelstein shall return to the said Charles J. Off said sum of eighteen hundred ($1800) dollars and take said personal property, and to insure said Off the return to him of said sum of eighteen hundred ($1800) dollars, as herein provided, he hereby agrees to enter into a bond, in the penal sum of one thousand ($1000) dollars, signed by George A. Littlewood, conditioned not only as above indicated, but in addition thereto to sign all papers and appeal bonds necessary, in the judgment of said Off, in the prosecution or defense of said suit, and that in the

event said bill of complaint is finally maintained, then the said Charles J. Off relinquishes all right and claim to the said sum of eighteen hundred ($1800) dollars, and in the event of the failure by the said Wesley City Coal Company to maintain its said suit, the damages accruing or to be recovered upon the injunction bond in consequence thereof said Off shall sue for in the name of the obligee or obligees in said bond, and he shall divide all damages so recovered by him equally between himself and the said Finkelstein, but in the event that said injunction suit is maintained, then the said Finkelstein shall keep and retain the said sum of eighteen hundred ($1800) dollars in full satisfaction and discharge of all damages sustained by him and said Grigsby in consequence of a breach of the warranty in said bill of sale, except that said Off shall make good to them all such damages as may be recovered against them as trespassers in consequence of their having previously taken possession of said personal property.

"Dated at Peoria, Illinois, this 4th day of December, A. D. 1899."

The bill of sale referred to is as follows:

"*Know all men by these presents,* That Charles J. Off, of the city of Peoria, has this day sold, and he does hereby grant, bargain and sell, unto George N. Grigsby, or his assigns, the following described personal property, to-wit: The stable, blacksmith shop, dump house, engine and boiler houses, all scales, one double engine, two single engines, all boilers, all coal buggies now on said premises, revolving screens, all tracks, switches, pumps, piping, iron and steel rails, ropes, fans, drums, poles, all pulleys, and all other goods and chattels, of every character and description, now contained in and about the premises known as the Wesley City Coal Company's plant, said goods and chattels being the same property bought by the said Charles J. Off at the execution sale made by the sheriff of Tazewell county, Illinois, on Sep-

tember 7, 1899, in the case entitled *James Millard* v. *Wesley City Coal Company*, excepting the store building therein described; and the said Charles J. Off hereby agrees to deliver all of said property herein upon said premises in the same condition that it was when bought by him at said sale; and the said Charles J. Off does hereby covenant that he is the unqualified owner of all of said property, and that he will warrant and defend the title to the same against all legal claim whatsoever. It is further agreed that the possession of the said property is to be taken by the said Grigsby at once, and by him used in pumping the water out of the mine known as the Wesley City coal mine. It is further agreed that after the said Grigsby has cleaned out the mines and examined same, he may, if he elects, have a lease upon the mineral rights and privileges sold at said sale for a period of ten years, at a royalty of five cents per ton, mine run, said lease to provide, however, for its termination upon the legal redemption from said sale, and to be otherwise conditioned so as to be satisfactory to the parties hereto. The option to lease said mines and real estate is to be exercised by said Grigsby or his assigns within thirty days from the date hereof; in the meantime the said Off will permit his custodian to watch and preserve said personal property free of charge to the said Grigsby. It is further agreed that at the expiration of thirty days from the date hereof said Grigsby shall pay to said Charles J. Off for said property the sum of eighteen hundred ($1800) dollars cash, whether he lease said mine or not, and if he, the said Grigsby, does not enter into said lease, he shall, within a period of ninety days next after the expiration of thirty days from the date hereof, remove all of said property from the said premises. It is further understood that any and all personal property which may have been removed by the said Charles J. Off or his agents since the date of sale above mentioned shall be restored and turned over to the said Grigsby, and be

included with the other personal property herein above specifically set forth.

"Dated at Peoria September 27, 1899.

CHARLES J. OFF,      [Seal.]
GEORGE N. GRIGSBY.   [Seal.]"

A plea of the general issue and a special plea of failure of consideration was filed. The cause was heard before the court without the intervention of a jury.

The appellant produced in evidence the bill of sale and the agreement. The parties to the proceeding stipulated that prior to the institution of this action the injunction suit referred to in the agreement had been dismissed on the motion of the complainant therein, the Wesley City Coal Company, and at the cost of the said complainant, and also further stipulated that appellees had not re-paid to the appellant the said sum of $1800 mentioned in the agreement, or any part of it. The defense was, that the property described in the bill of sale as personal property was, in fact, fixtures, and as such a part of the real estate of the said Wesley City Coal Company, and that by the sale made by the sheriff to the appellant, under the execution in favor of James Millard and against said coal company, the appellant purchased real estate only, and that the coal company, as it lawfully might, within the time allowed by law redeemed from said sale, and that therefore the said appellant had obtained no title to the property described in the bill of sale.

The appellees produced evidence tending to show that the stable, boiler houses, tracks, etc., described in the bill of sale as personal property, were so connected, in use, with certain real estate or mining leases possessed by said coal company, and so attached or appended to the realty, as to give them the character of real estate, and also produced in evidence a certificate of purchase issued by the sheriff and delivered to the appellant, reciting that at the sale made by the sheriff under the

execution in the said case of *Millard* v. *Wesley City Coal Company*, the appellant was the highest and best bidder for and became the purchaser of certain parcels of real estate and certain mining rights in coal underlying the surface of other described tracts of land, and certifying that said appellant would be entitled to a deed therefor unless the same should be redeemed according to law. The appellees also produced in evidence a certificate showing the Wesley City Coal Company had redeemed the real estate so sold by the sheriff to the appellant. The appellees also showed that after this redemption they purchased from the Wesley City Coal Company the same property which it appeared from the bill of sale they had previously contracted to buy from the appellant, and for which they paid him said sum of $1800, being the same sum which appellant returned to appellees in pursuance of the contract set out in the declaration.

The appellant did not attempt to combat the evidence produced, for the purpose of showing that the stable, blacksmith shop, dump house, engine and boiler houses, engines, tracks, etc., which were the subject matter of the bill of sale executed by him to the appellees, were not so physically fixed or annexed to the realty of the coal company and so connected in use therewith as to become and compose a part of such realty. On the contrary, his statements as a witness were, in substance, that the property in question was used in connection with the operation of the coal mine; that the tracks were "spiked down" for use, the engines "set up" for use, etc. That such property was in fact fixtures and part of the real estate was established without dispute. Appellant endeavored to meet this state of case by offering to show that the sheriff, in the advertisement for the sale of the property under the execution, described it as personal property and offered it for sale at the sale as personal property; that he bid upon and bought it as personal property, and that the sheriff directed him to take pos-

session of it as personal property. The court refused to permit such proof to be made. This ruling is now assigned as for error.

The court did not err in the ruling. The property which was the subject matter of the contract of sale between the appellant and the appellees, having been shown by the testimony, without dispute, to be fixtures, became and was part and parcel of the realty. It was not within the power of the sheriff to seize upon and sell it as personal property and thus deprive the debtor of the right of redemption granted by the statute. In *Titus* v. *Mabee*, 25 Ill. 257, we said: "We are not aware that any adjudged case has ever held that improvements or fixtures to real estate may be thus detached and sold under judicial process without the consent of the owner. If this may be done, houses, fences, timber, fruit trees, and almost every description of improvement, might be converted into personalty and the right of redemption defeated, and great injury and loss inflicted, by the plaintiff and officer, under the *forms* but contrary to the spirit of the law. * * * All such things, after they are annexed, must be regarded as inseparable from the freehold, until severed by the owner." "Articles which are so annexed to land as to be part thereof cannot be levied on as personalty under an execution against the owner of the land." (13 Am. & Eng. Ency. of Law, 674.) The court, therefore, properly declined to hear proof designed to show that the sheriff did what he had no lawful power or authority to do. Moreover, the certificate of purchase executed by the sheriff and delivered to and accepted by the appellant described various tracts and parcels of land to which the property the appellant assumed to sell to the appellees had become appended as fixtures, and recited that said parcels of land were struck off and sold to appellant at and for the sum which he testified was the total of his bids on all classes of property purchased by him at the sale. It may be remarked, in passing, that

the coal company was required, in order to effect redemption of the land, to pay, and did pay, the full total amount bid by the appellant, together with legal interest thereon from the day of sale to the time of making the redemption. It need scarcely be observed the appellant obtained no right, during the period allowed by the statute for redemption, to the present possession of any real estate, or anything forming a part thereof, as a fixture, by virtue of having been the highest bidder therefor at the sale made by the sheriff.

It is next assigned as for error that the Appellate Court refused to grant the motion of appellant for leave to assign additional errors. The case was submitted for decision at the October term, 1901, of the Appellate Court. The judgment of affirmance was entered January 24, 1902. The motion for leave to file or assign additional errors was entered February 1, 1902, some seven days after the rendition of judgment in the case. It was not error to refuse to allow the assignment of additional errors. The application for leave to file additional assignments of error is addressed to the discretion of the court of review, and the ruling of the court therein may be reviewed only if the discretion was grossly abused.

Other questions are discussed by counsel for the appellant, but they all grow out of the action of the court in ruling upon propositions of law. Counsel for appellees insists none of these matters were assigned as for error in the Appellate Court. We have consulted the record and find the insistence of appellees to be correct. This appeal asks us to review the action of the Appellate Court, and we can only do so as to the rulings of that court on matters on which it was asked to rule.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*